[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-13874

_____

D.C. Docket No. 4:14-cr-00003-BAE-GRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES JOHNSON, III,
a.k.a. Chucky,
a.k.a. Chuckie,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(October 5, 2015)

Before TJOFLAT and HULL, Circuit Judges, and BARTLE,[*] District Judge.

HULL, Circuit Judge:

_____

[*]Honorable Harvey Bartle III, United States District Judge for the Eastern District of
Pennsylvania, sitting by designation.

Defendant Charles Johnson, III, appeals his sentence of 102 months' imprisonment for armed bank robbery.  After careful review of the record and briefs, and with the benefit of oral argument, we affirm.

## I.  BACKGROUND

A federal grand jury charged Johnson with (1) one count of bank robbery, in violation of 18 U.S.C. § 2113(a); (2) one count of conspiracy to commit armed bank robbery, in violation of 18 U.S.C. § 371; (3) six counts of armed bank robbery, in violation of § 2113(a) and (d); (4) three counts of using, carrying, and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and (5) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  Pursuant to a plea agreement, Johnson pled guilty to a single count of armed bank robbery for the July 2013 robbery of the Savannah Bank in Garden City, Georgia.

## A.    Offense Conduct

We recount the facts from Johnson's written plea agreement, his guilty plea colloquy, and the presentence investigation report ("PSI").  On July 11, 2013, at about 9:52 a.m., Johnson entered the Savannah Bank wearing a dark covering across his face, a baseball hat, and gloves.  When Johnson entered the bank, four bank tellers, but no customers, were present.  Bank tellers S.M. and K.S. were

2

stationed behind the teller counter, N.B. was positioned at the drive-through window, and J.W. was working at her desk.

Defendant Johnson looked at J.W. and instructed her not to touch the alarm button or pick up the phone.  Johnson then brandished a silver pistol and jumped on the teller counter.  He pointed the firearm at the tellers and gave verbal instructions for the tellers to give him all the money and not to include dye packs or "funny money" with the funds; however, tellers placed dye packs with the money.  Johnson threw back the blocks of funds containing the dye packs and stated, "I said I will kill you."  Johnson fled the bank with a total of $19,633 from the three bank teller drawers.

In his written plea agreement, Johnson admitted that he assaulted people and put their lives in jeopardy by "using a dangerous weapon" during the course of the robbery.  Johnson further admitted that he "used a firearm to take United States currency from the presence of bank tellers by force, violence and intimidation."

At his change of plea hearing, Johnson orally reaffirmed that he assaulted people and put their lives in jeopardy by "using a dangerous weapon" during the course of the robbery.  Additionally, a government agent testified that Johnson vaulted the teller counter, pointed a firearm at the teller, and demanded money.  Johnson neither refuted the government agent's testimony, nor objected to the PSI's statement of facts.

3

**B.**     **Sentencing Guidelines Calculations**

The PSI recommended a base offense level of 20, pursuant to U.S.S.G. § 2B3.1(a)(2).  To that base offense level, the PSI added: (1) a two-level increase because Johnson took the property of a financial institution, § 2B3.1(b)(1); (2) a six-level increase because "a firearm was otherwise used," § 2B3.1(b)(2)(B); and (3) a one-level increase because the $19,633 loss amount was more than $10,000 but less than $50,000, § 2B3.1(b)(7)(B).

After a three-level reduction for acceptance of responsibility, Johnson's adjusted offense level was 26.  Based on this total offense level and criminal history category of II, Johnson's advisory guidelines range was 70 to 87 months' imprisonment.  The probation officer recommended a sentence of 120 months' imprisonment, representing an upward variance from Johnson's guidelines range, based in part on Johnson's "significant ongoing criminal history," as described below.

**C.**     **Johnson's Criminal History**

Johnson's criminal history began in 2001, when he was 14 years old, with two automobile theft offenses.  By age 17, in 2004, Johnson was convicted of possessing a stolen firearm in state court and sentenced to probation.

Then, in 2005, at 18 years old, Johnson burglarized a firearms dealer's building and stole 32 firearms.  As a result, in 2007, Johnson was convicted in

4

federal court of stealing firearms from a licensee and sentenced to 71 months' imprisonment and three years' supervised release. In May 2010, Johnson was released. In May 2013, his supervised release term expired. Thus, when Johnson committed the instant bank robbery in July 2013 at 26 years old, he only recently had completed his supervised release term.

## D.    Other Robberies Committed by Johnson

The PSI also recounted the seven additional robberies charged in the indictment, all of which Johnson committed or participated in during the 14 months leading up to the July 2013 Savannah Bank robbery to which he pled guilty.[1]

On May 8, 2012, defendant Johnson and accomplice Derick Hayes robbed a Savannah, Georgia, bank, fleeing with $39,747. In the course of that robbery, Johnson pulled a bank employee from her office at gunpoint, hit her on the head with his hand, and knocked her cell phone from her hand. Johnson pushed another bank employee toward the floor. Johnson and his accomplice made all those present in the bank lie on the lobby floor, close their eyes, and place their hands behind their heads.

---

[1]These other robberies all occurred while Johnson was on supervised release for his 2007 federal conviction. The robberies were not considered "relevant conduct" for sentencing enhancement purposes.

On September 25, 2012, Johnson robbed another Savannah bank, this time taking $5,421.  Johnson passed a note to a teller stating that he had a gun and also whispered to the teller that he would shoot her if she said anything.

On November 8, 2012, Johnson and accomplice Rico Edwards robbed a Savannah credit union of $750 using firearms.  During the course of that robbery, Johnson was armed with a "long gun" and pushed, grabbed, or scratched multiple credit union employees and patrons.

On November 19, 2012, Johnson served as the getaway driver for accomplice Edwards's armed robbery of an educational supply store in Savannah. On November 20, 2012, Edwards robbed another Savannah bank of $12,288 using a firearm and Johnson's car.  On December 18, 2012, Johnson again served as the getaway driver for Edwards's armed robbery of a bank that yielded $2,104.

On January 3, 2013, accomplice Edwards robbed a Savannah bank of $17,571, using a pistol that he pointed at multiple bank tellers.  Johnson provided the pistol for the robbery, and the record indicates that Johnson served as the getaway driver.

## E.    Sentencing Hearing

At sentencing, through counsel, defendant Johnson objected to the six-level increase to his offense level under § 2B3.1(b)(2)(B) for a firearm having been "otherwise used" in the armed robbery.  Johnson argued that the enhancement

should not apply because, according to the uncontested facts in the PSI, the "pointing of [the] firearm" and the "threat . . . didn't happen at the same time." Johnson contended that he should receive instead a five-level enhancement under § 2B3.1(b)(2)(C) for "brandishing a firearm." The district court overruled Johnson's objection and adopted the PSI's factual statements.

In mitigation, defendant Johnson presented the testimony of his sister, Lakeisha Mincey, who asked for mercy on Johnson's behalf and testified that Johnson had shown remorse for his crimes. Johnson addressed the district court and offered apologies to his victims. Johnson requested a sentence within his advisory guidelines range of 70 to 87 months, noting his absent father and his desire to be present in his own ten-year-old son's life. Johnson's counsel echoed the request for a within-guidelines sentence, stressing Johnson's acceptance of responsibility. Counsel also argued that Johnson's guidelines range already was considerably increased by the specific offense characteristics, including Johnson's use of a gun, such that the guidelines range reflected a "significant" and "just" punishment.

The government responded that a within-guidelines sentence would not adequately deter Johnson, given that he "obviously didn't learn any lessons from" his previous 71-month federal sentence. The government also recounted the

violent details of Johnson's robberies, stressing his use of firearms and repeated threats to kill his victims.

Johnson's counsel replied that the government's "rendition of this bank robbery is just like every other armed bank robbery where there is no discharge of a firearm or certainly no bodily injury." Accordingly, a 70- to 87-month sentence was "what the Sentencing Commission says is appropriate according to the Guidelines."

The district court sentenced Johnson to 102 months' imprisonment, reflecting a 15-month upward variance. The district court stated that it had considered the 18 U.S.C. § 3553(a) factors; the PSI; the statements of the attorneys, defendant Johnson, and Johnson's sister; and several victim impact statements. Six victims of Johnson's November 8, 2012, robbery of a Savannah credit union submitted impact statements. The victims described the fear they experienced during the robbery and the ongoing nervousness, suspiciousness, and nightmares associated with their workplace following the robbery.

The district court also explained that it considered the § 3553(a) factors in imposing an upward variance—in particular the nature and circumstances of the offense, the history and characteristics of Johnson, and the seriousness of the offense, as well as the need to provide just punishment, adequate deterrence, and protection of the public from Johnson's future crimes. The district court further

noted that Johnson was involved in eight robberies within a 14-month period, threatened to kill multiple victims at gunpoint, and had a history of crimes involving firearms.  The district court reasoned that Johnson's ongoing criminal activity following his prior federal conviction demonstrated "an almost complete disrespect for any prior court orders."  In sum, the district court determined that the advisory guidelines range in this case did not adequately account for Johnson's conduct in the seven additional robberies.

## II.  DISCUSSION

### A.    Sentencing Enhancement

On appeal, defendant Johnson contends that the district court should have applied a five-level increase to his offense level for "brandishing" a firearm, pursuant to U.S.S.G. § 2B3.1(b)(2)(C), instead of the six-level increase for "otherwise using" the firearm, pursuant to § 2B3.1(b)(2)(B).[2]

Section 2B3.1(b) of the Sentencing Guidelines provides varying enhancements to the base offense level assigned to robbery based on the use of a firearm.  Specifically, the section provides for: (1) a seven-level increase if a firearm was "discharged," § 2B3.1(b)(2)(A); (2) a six-level increase if a firearm was "otherwise used," § 2B3.1(b)(2)(B); and (3) a five-level increase if a firearm was "brandished or possessed," § 2B3.1(b)(2)(C).

---

[2]We review de novo the district court's interpretation of the guidelines and its application of guidelines to the facts.  United States v. Moran, 778 F.3d 942, 959 (11th Cir. 2015).

The Commentary to § 1B1.1 defines "brandished" and "otherwise used." See U.S.S.G. § 2B3.1 cmt. n.1 (U.S. Sentencing Comm'n 2013). A firearm is "brandished" if "all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person." U.S.S.G. § 1.B1.1 cmt. n.1(C). A firearm is "otherwise used" if the "conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon." U.S.S.G. § 1.B1.1 cmt. n.1(I).

This Court first considered where the line is drawn between "brandished" and "otherwise used" in United States v. Wooden, 169 F.3d 674 (11th Cir. 1999). There, this Court held that the defendant's conduct constituted an "otherwise use" of the weapon, and not merely a "brandishing" thereof. Id. at 676. This Court noted that the defendant "pointed the handgun at a specific victim, holding the gun one-half inch from the victim's forehead." Id. This Court relied on the precedent of other circuits that involved explicit threats, explaining that, although the defendant's threat was "not verbalized," his conduct was "equally coercive and threatening." Id.

In United States v. Cover, this Court held that "the use of a firearm to make an explicit or implicit threat against a specific person constitutes 'otherwise use' of

the firearm."  199 F.3d 1270, 1278 (11th Cir. 2000), <u>superseded by regulation on other grounds as noted in</u> <u>United States v. Diaz</u>, 248 F.3d 1065, 1107 (11th Cir. 2001).  In that case, firearms were used during a bank robbery to force at gunpoint customers and employees to lie on the floor and, in an escape by carjacking, to hold a kidnapped motorist at gunpoint.  <u>Id.</u> at 1272-73, 1279.  This Court held that the district court erred in applying to the defendant's offense level the five-level enhancement under § 2B3.1(b)(2)(C) for "brandishing" instead of applying the six-level enhancement under § 2B3.1(b)(2)(B) for "otherwise use[]" of the firearm.  <u>Id.</u> at 1279.

Notably, at the time this Court decided <u>Wooden</u> and <u>Cover</u>, the guidelines provided a different definition of "brandished."  Specifically, a defendant "brandished" his weapon when "the weapon was pointed or waved about, or displayed in a threatening manner."  U.S.S.G. § 1B1.1 cmt. n.1(c) (1998).[3]

Nevertheless, since the current definition of "brandish" went into effect, this Court has reaffirmed that the "otherwise use[]" of a firearm includes the use of the

_____

[3]In 2000, the Sentencing Commission redefined "brandish" as stated above—"all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person."  U.S.S.G. § 1.B1.1 cmt. n.1(C).  The definition was changed to conform to the definition of "brandish" found in the Act to Throttle the Criminal Use of Guns, Pub.L. No. 105-386, 112 Stat. 3469, codified at 18 U.S.C. § 924(c)(4).  <u>See</u> U.S.S.G. Appx. C, Vol. II, Amendment 601 (Nov. 2000).  The purpose of the amendment was to "avoid confusion that can be caused by different guideline and statutory definitions of identical terms" and to "increase punishment in some circumstances for persons who 'make the presence of the weapon known to another person, in order to intimidate that person,' regardless of whether the weapon is visible."  <u>Id.</u>

firearm to make an explicit or implicit threat against a specific person. See, e.g., United States v. Verbitskaya, 406 F.3d 1324, 1339 (11th Cir. 2005); United States v. Douglas, 489 F.3d 1117, 1129 (11th Cir. 2007), abrogated on other grounds by United States v. Whatley, 719 F.3d 1206, 1214-16 (11th Cir. 2013).

In Verbitskaya, this Court rejected the defendant's argument that the district court erred in applying the "otherwise used" enhancement because there was no evidence that the weapon was pointed at the victim. See 406 F.3d at 1338-39.[4] This Court noted that the victim testified that the defendant's co-conspirator beat him with a golf club, punched him with a knife, and threatened to have his daughter raped. Id. at 1339. The co-conspirator then grabbed a handgun from behind his back and threatened to shoot the victim if the victim did not comply with his demands. Id. Additionally, an officer responding to the crime scene testified that she heard "the rack of a gun" as she waited for assistance from other officers. Id. This Court concluded that this evidence supported the district court's finding that the firearm was used to make an explicit threat. Id.

Subsequently, in Douglas, this Court upheld the application of the "otherwise used" enhancement where the defendant showed the victim his gun—which he held by his groin area but did not point at the victim—and told the victim

---

[4]Verbitskaya involved the application of U.S.S.G. § 2B3.2(b)(3)(A), the Guidelines provision that provides enhancements for the use of a firearm in extortion by force. However, "otherwise used" and "brandished" as used in this provision are defined by reference to the Commentary to § 1B1.1, identically to the terms as used in § 2B3.1(b)(2). See U.S.S.G. § 2B3.2(b)(3) cmt. n.1.

that he would hurt her if she did not comply. 489 F.3d at 1128-29. This Court reasoned that this conduct constituted an explicit threat against the victim, as well as an implicit threat against her two-year-old son, who "was unable to act independently of [the victim]." Id. at 1120, 1129. Furthermore, the victim believed that both she and her son were in danger of physical harm from the defendant. Id. at 1129.

Here, we conclude that the district court properly enhanced Johnson's sentence under § 2B3.1(b)(2)(B) for having "otherwise used" a firearm. According to the PSI[5] and testimony from a government agent, after brandishing a pistol and jumping on the teller counter, Johnson pointed the pistol at the tellers and demanded money without dye packs. Shortly thereafter, upon receiving the money and discovering that the tellers did include dye packs, Johnson stated, "I said I will kill you."

Johnson's conduct in pointing the firearm at the tellers while demanding money without dye packs clearly constituted an implicit threat because it communicated to the tellers that their failure to comply with his instructions would result in bodily harm or death. Indeed, Johnson confirmed his meaning when he explicitly threatened the tellers after they included dye packs with the money.

---

[5]Because Johnson did not object to the PSI's facts, the facts are deemed admitted. See United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005).

13

Thus, Johnson's use of the firearm to both implicitly and explicitly threaten the tellers amounted to "otherwise use[]" of the firearm. See Cover, 199 F.3d at 1278.

Moreover, Johnson's use of the firearm to obtain compliance with his demands plainly amounted to more than brandishing; it was more than merely displaying the firearm or making its presence known in order to intimidate the tellers. Compare U.S.S.G. § 1.B1.1 cmt. n.1(C). In fact, Johnson admitted that he assaulted the tellers and put their lives at risk by "using a dangerous weapon," and that he "used a firearm to take [money] from the . . . bank tellers by force, violence and intimidation." Accordingly, Johnson's use of the firearm was "coercive and threatening" and went beyond intimidation. See Wooden, 169 F.3d at 676.

Johnson argues that he only "brandished" his pistol within the meaning of the Guidelines because he did not threaten a specific person or point his pistol at a specific person. This argument is unavailing. Johnson's implicit threat of violence coupled with pointing the firearm at the tellers put his conduct within the "otherwise used" category instead of merely "brandishing." Under these circumstances, the fact that Johnson collectively threatened a specific group of tellers and pointed his firearm at all of them, and not a single teller, is immaterial.

And Johnson's contention that he did not "otherwise use" his pistol because he did not "literally level[] [it] at one's person . . . closely and ominously" is foreclosed by our precedent. See Douglas, 489 F.3d at 1128-29 (holding that

14

defendant "otherwise used" his firearm where he held firearm at his groin area and did not point it at victim); Verbitskaya, 406 F.3d at 1338-39 (rejecting defendant's argument that firearm was not "otherwise used" because there was no evidence that weapon was pointed at victim).

We also find unpersuasive Johnson's reliance on United States v. Matthews, 20 F.3d 538 (2d Cir. 1994), where the Second Circuit held that the defendants merely "brandished," and did not "otherwise use[]," their weapons during a bank robbery when they issued explicit threats while "brandish[ing] and point[ing their firearms] menacingly." Id. at 553-54. For starters, we already treated Matthews as contrary authority in Cover when we held that the use of a firearm to make an explicit or implicit threat against a specific person constitutes "otherwise use" of the firearm. See Cover, 199 F.3d at 1278-79, 1279 n.6.

In addition, the Second Circuit decided Matthews prior to the 2000 amendment to the guidelines definition of "brandish[ing]." Thus, at the time, to "otherwise use[]" a firearm, a defendant must have done more than "point[] or wave[] [it] about, or display[] [it] in a threatening manner." See Matthews, 20 F.3d at 553. Now, the amended definition of "brandished" has effectively lowered the floor for what constitutes "otherwise use[]," since to "otherwise use[]" a firearm, a defendant must merely do more than "display" the weapon or make its presence known "in order to intimidate." See U.S.S.G. § 1.B1.1 cmt. n.1(C).

15

For all these reasons, Johnson has shown no error in the district court's enhancement of his sentence under § 2B3.1(b)(2)(B) for "otherwise us[ing]" a firearm.

## B.    Substantive Reasonableness

Defendant Johnson next argues that his 102-month sentence of imprisonment, resulting from a 15-month upward variance from his advisory guidelines range of 70 to 87 months, is substantively unreasonable.

We review "all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard." Gall v. United States, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007).  We consider whether a sentence is substantively unreasonable under the totality of the circumstances and in light of the 18 U.S.C. § 3553(a) factors.[6]  United States v. Cubero, 754 F.3d 888, 892 (11th Cir.), cert. denied, 135 S. Ct. 764 (2014).

In determining a sentence, a district court must evaluate all of the § 3553(a) factors but can attach "great weight" to one factor over others.  Id.  The weight

---

[6]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.  18 U.S.C. § 3553(a).

16

given to any specific § 3553(a) factor is committed to the sound discretion of the district court. United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007).

"If the district court determines that a sentence outside the guideline range is appropriate, it must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." United States v. Overstreet, 713 F.3d 627, 636 (11th Cir. 2013) (quotation omitted). Even as to a substantial variance, "we will not reverse a sentence unless we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." Id. (quotation omitted).

This Court has held that "the district court, in imposing a variance, may consider conduct that a probation officer already had considered in calculating the defendant's advisory guidelines range." United States v. Moran, 778 F.3d 942, 983 (11th Cir. 2015). In Moran, we found no abuse of discretion in the district court's imposition of an upward variance based, inter alia, on the finding that the defendant's criminal history category understated the seriousness of his criminal history. Id. at 983-84. In relevant part, we reasoned that the district court properly considered the defendant's prior criminal conduct in varying upward, even though the conduct already was factored into the advisory guidelines range. Id. at 984.

17

Here, defendant Johnson has not shown that the district court abused its discretion in weighing the § 3553(a) factors and imposing an above-guideline sentence of 102 months' imprisonment. The district court stated that it had considered the § 3553(a) factors, the PSI, and the statements of the parties and victims in determining a sentence. The district court also weighed the § 3553(a) factors in imposing an upward variance and provided a detailed explanation for the extent of the upward variance. See Overstreet, 713 F.3d at 636; see also Moran, 778 F.3d at 983 ("If the district court sentences outside the advisory guidelines range, it should explain why the variance is appropriate in that particular case.").

The district court reasonably found that the advisory guidelines range of 70 to 87 months understated the seriousness of Johnson's recent criminal history, which included participation in a string of 8 armed robberies in a 14-month period.[7] See Moran, 778 F.3d at 983-84. In all of these robberies, the victims were held at gunpoint by Johnson or one of his confederates and feared for their lives. And in the instant bank robbery, as we discussed above, Johnson used a gun to implicitly threaten the tellers while demanding money and then explicitly threatened to kill them after they included dye packs with the money. In addition,

---

[7]On appeal, although defendant Johnson contends that the government "indirectly assented" to his advisory guidelines range by agreeing to a plea to only one count of the indictment, he does not argue that the district court erred in considering unconvicted conduct in sentencing him. In any event, a district court is free to consider any information relevant to a defendant's "'background, character, and conduct' in imposing an upward variance." United States v. Tome, 611 F.3d 1371, 1379 (11th Cir. 2010) (quoting 18 U.S.C. § 3661).

18

as the district court observed, Johnson had a long criminal history involving firearms.

Further, we cannot say the district court abused its discretion in finding an above-guidelines sentence was necessary to provide adequate deterrence, protect the public from Johnson's future crimes, and promote respect for the law. See 18 U.S.C. § 3553(a)(3), (2), (5). Johnson participated in multiple robberies within a couple years of his release from federal prison on a 71-month sentence. As the government observed at sentencing, this sentence apparently was insufficient to deter Johnson from future criminal conduct. Thus, the district court reasonably determined that a sentence beyond Johnson's 70-87 month advisory guidelines range was necessary.

Johnson contends that all relevant factors for the district court to consider in imposing a sentence already were incorporated into the calculation of his advisory guidelines range, such that "no fact or circumstance in this case warranted a variance." This argument is meritless under Moran. See Moran, 778 F.3d at 983. Johnson also maintains that the offense of which he was convicted was no different than the "average, run-of-the-mill robbery" and did not justify an above-guideline sentence. Even assuming, however, that the instant bank robbery was "run of the mill," the district court was permitted under § 3553(a) to consider numerous other factors beyond the circumstances and seriousness of the instant offense in varying

upward.  Thus, the district court properly considered factors such as Johnson's criminal history and the need for deterrence in determining that an upward variance was warranted.  See 18 U.S.C. § 3553(a)(1), (3).  Further, the weight to be given each of these factors was within the district court's discretion, and we will not reweigh the factors.  See Cubero, 754 F.3d at 892; Clay, 483 F.3d at 743.

### III. CONCLUSION

For the foregoing reasons, we affirm defendant Johnson's sentence of 102 months' imprisonment.

**AFFIRMED.**