[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-14056

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRIAN KEITH MORROW,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cr-20057-CMA-1

_____

Before Rosenbaum, Branch, and Grant, Circuit Judges.

PER CURIAM:

After a jury trial, Brian Morrow was convicted of one count of knowingly using one or more unauthorized access devices with intent to defraud, *see* 18 U.S.C. § 1029(a)(2), and sentenced to 41 months of imprisonment. The trial evidence showed that Morrow used four debit cards issued in the names of others to withdraw funds that were deposited from fraudulent unemployment claims. At sentencing, the district court calculated an intended loss of $284,739, using the maximum payable benefit amount for each of the fifty-six fraudulent unemployment claims that had been configured to send payments to the four debit cards. On appeal, Morrow contends that the court's loss determination was pure speculation and that the amount was closer to $26,000. He also argues that his sentence was unduly harsh because he was a first-time offender. After careful review, we affirm.

## I.

We review for clear error the district court's determination of the amount of loss attributable to a defendant. *United States v. Cavallo*, 790 F.3d 1202, 1232 (11th Cir. 2015). To hold that a factual finding is clearly erroneous, we must be convinced that the court made a mistake. *United States v. Chalker*, 966 F.3d 1177, 1194 (11th Cir. 2020). A loss finding based on a reasonable construction of the

evidence is not clearly erroneous. *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012).

The guideline for fraud offenses, U.S.S.G. § 2B1.1, calls for an increase in the offense level of up to 30 levels based on the extent of loss. *See* U.S.S.G. § 2B1.1(b)(1). Loss is defined as "the greater of actual loss or intended loss." *Id.* § 2B1.1, cmt. n.3(A). Actual loss is "the reasonably foreseeable pecuniary harm that resulted from the offense." *Id.*, cmt. n.3(A)(i). Intended loss is "pecuniary harm that the defendant purposely sought to inflict," including "intended pecuniary harm that would have been impossible or unlikely to occur." *Id.*, cmt. n.3(A)(ii). The guidelines do not require a precise determination of loss, and the sentencing court may make a reasonable estimate. *Id.*, cmt. n.3(C).

When the loss amount is disputed, the government has the burden of proving by a preponderance of the evidence the losses attributable to the defendant. *Cavallo*, 790 F.3d at 1232. It must meet that burden with reliable and specific evidence, which can include evidence at trial, undisputed statements in the presentence investigation report, or evidence presented at sentencing. *United States v. Baldwin*, 774 F.3d 711, 727 (11th Cir. 2014); *United States v. Bradley*, 644 F.3d 1213, 1290 (11th Cir. 2011). While the district court may make a reasonable estimate of loss, and may make inferences based on circumstantial evidence, it "must not speculate concerning the existence of a fact which would permit a more severe sentence under the guidelines." *Bradley*, 644 F.3d at 1290 (quotation marks omitted).

Here, the district court did not clearly err in determining a loss amount of $284,739 at sentencing, which triggered a 12-level increase to the offense level. *See* U.S.S.G. § 2B1.1(b)(1)(G). The evidence presented at trial and at sentencing established that Morrow used four debit cards issued in the names of victims of identity theft to withdraw fraudulently obtained unemployment benefits. The cards were used for a total of $26,000 in withdrawals or attempted withdrawals. Surveillance footage recovered of the withdrawals showed Morrow, and only Morrow, withdrawing a total of about $2,000 using the four debit cards on various occasions at ATMs between November 2018 and March 2019. A total of fifty-six fraudulent unemployment claims were configured to funnel benefits to the accounts connected to the four debit cards used by Morrow. The maximum total amount payable by South Carolina on the fifty-six claims was $284,739, according to the formula used by the state to calculate unemployment benefits for each claim. Viewed as a whole, these facts reasonably support the district court's finding that the intended loss of Morrow's conduct was more than $250,000.

Morrow's arguments to the contrary miss the mark. The district court properly used the maximum payable benefits for each claim to measure intended loss in this case, even if Morrow received much less than that amount. Indeed, we have explained that "when a sentencing court is determining the proper punishment for a defendant's fraud, the court uses the reasonable

mathematical limit of his scheme, rather than his concrete result." *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010).

Nor was the court limited to calculating one fraudulent claim per debit card, as Morrow suggests, when the evidence established that a total of fifty-six fraudulent claims were being funneled to those four cards. That Morrow may not have known the precise number of fraudulent claims attached to each card does not prevent holding him accountable for those claims based on his knowing use of the unauthorized debit cards with intent to defraud. *Cf.* U.S.S.G. § 1B1.3, cmt. n.4(A) ("[A] defendant who transports a suitcase knowing that it contains a controlled substance . . . is accountable for the controlled substance in the suitcase regardless of his knowledge or lack of knowledge of the actual type or amount of that controlled substance.").

Morrow also asserts that the government presented "no evidence" to show how it arrived at the $284,739 figure and that the amount was "pure speculation." We disagree. Special Agent Will Tippens of the Department of Labor's Office of Inspector General testified at the sentencing hearing about the calculation of the approximately $284,739 figure. He explained that South Carolina pays unemployment benefits for a maximum of 20 weeks per year, with weekly benefit maximums and minimums of $326 and $42, respectively. So according to Tippens, the maximum payable benefit for each claim is the product of the weekly benefit amount, times 20 weeks, which is the total amount of money "that would have been available had the State not stopped it." Tippens further

stated that the formula used to derive the weekly benefit amount is "certified by law" and based on prior wages, and that the state of South Carolina provided the maximum benefit for each of the claims based on that formula.[1]

While Tippens did not receive or review the state's underlying calculations, Morrow offers no reason to doubt that the state accurately calculated the weekly benefits for each claim or that Tippens accurately compiled those figures.  Nor does Morrow take issue with any specific aspect of Tippens's testimony.  So despite the lack of precise calculations in the record, we cannot say that the district court clearly made a mistake in concluding that sufficient evidence supported a finding that the intended loss exceeded $250,000.  We therefore affirm the court's loss determination.

## II.

We review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard, considering whether the statutory factors in 18 U.S.C. § 3553(a) support the sentence under the totality of the circumstances. *United States v. Nagel*, 835 F.3d 1371, 1376 (11th Cir. 2016); *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).

---

[1] We note that the state plainly did not use the absolute maximum of $326 per week for each claim, which would have resulted in a total loss of approximately $365,000.

The district court must impose "a sentence sufficient, but not greater than necessary, to comply with the purposes" listed in 18 U.S.C. § 3553(a)(2), including the need to reflect the seriousness of the crime, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public. 18 U.S.C. § 3553(a)(2)(A)–(C). The weight to be given the § 3553(a) factors is generally committed to the court's discretion, and "we will not re-weigh the factors." *United States v. Johnson*, 803 F.3d 610, 620 (11th Cir. 2015). Ordinarily, we will vacate a sentence only if the party challenging it convinces us that, despite the "substantial deference" afforded sentencing courts, the sentence lies outside the range of reasonable sentences dictated by the facts of the case. *United States v. Irey*, 612 F.3d 1160, 1190–91 (11th Cir. 2010) (*en banc*); *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015).

Here, Morrow's sentence is substantively reasonable. The district court imposed a sentence at the low end of the guideline range of 41 to 51 months, and we ordinarily expect such a sentence to be reasonable. *United States v. Stanley*, 739 F.3d 633, 656 (11th Cir. 2014). Nothing in the record suggests that this case is an extraordinary one where a low-end guideline sentence is unreasonable. The court explained that, in imposing the 41-month sentence, it had considered Morrow's history and characteristics as set forth in the PSR and the sentencing memoranda, the serious nature of the offense conduct, and the need for the sentence to promote respect for the law and to deter both Morrow and others. Thus, the

record shows that the court weighed Morrow's lack of criminal history against the serious nature of the offense conduct and other sentencing needs, and it found that a guideline sentence was appropriate. These balancing decisions were squarely within the district court's discretion, and Morrow has not shown that the court made a clear error of judgment. *See Irey*, 612 F.3d at 1190–91; *Johnson*, 803 F.3d at 620. We affirm his sentence.

**AFFIRMED.**