[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-11069

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ANGELO VICTOR FERNANDES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:22-cr-14046-AMC-1

_____

Before JORDAN, BRANCH, and LAGOA, Circuit Judges.

PER CURIAM:

Angelo Victor Fernandes appeals his sentence of 188 months' imprisonment following his guilty plea to the distribution of child pornography. On appeal, Fernandes argues that the district court miscalculated his guideline range by applying a 5-level enhancement based on the guidelines commentary, Section 2G2.2, n.6(B)(ii), which defines one child pornography video as 75 images. After careful review, we affirm.

## I.    Background

Fernandes was charged in an indictment with distribution of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1). Fernandes pleaded guilty.

The presentence investigation report ("PSI") described the following offense conduct. On April 30, 2022, Fernandes' former coworker, Daniel Crow, had his phone searched and seized by Homeland Security Investigations ("HSI") pursuant to a border search at the Philadelphia airport. A search of Crow's phone showed chats with Fernandes in which "Crow promised to send Fernandes videos of himself masturbating if Fernandes sent him" child pornography in exchange. Crow and Fernandes also "discussed Fernandes' ability to obtain children for sex."

The videos Fernandes sent to Crow included, for example, "depictions of prepubescent females engaged in lascivious

exhibition"; "prepubescent boys engaged in vaginal intercourse with possible older sibling females and adult females"; and videos "depict[ing] an adult male . . . anally penetrating a prepubescent female who is exhibiting signs" of pain. All of the child pornography videos Fernandes sent to Crow were shorter than two minutes.

In July 2022, Fernandes was subjected to a secondary inspection by HSI at the San Francisco Airport. Agents located the messages between Fernandes and Crow, as well as a conversation Fernandes had with another individual "where Fernandes said that he performed oral sexual acts with a 14-year-old boy." Agents also located many other chats "between Fernandes and other individuals in which [Fernandes] offered to procure children for sex." "Based on a forensic examination of Fernandes'[s] phone as well as Crow's phone, Fernandes is responsible for 16 still images and 13 videos that depict child sexual abuse . . . , which included . . . prepubescent minors under the age of 12" and toddlers.

The PSI also referenced a statement Fernandes made. Per the PSI, in that statement, Fernandes said that he "was attracted to Crow[] and wanted to see sexually explicit material featuring Crow." "When [Fernandes] found out that Crow liked child pornography, [Fernandes] obtained child pornography . . . and sent it to Crow in hopes that Crow would" send him videos of Crow masturbating. He also said that he only told Crow that he

could arrange encounters with underage children to arouse Crow, but he did not intend to follow through.

Fernandes received a total offense level of 34, including a five-level increase because "the offense involved 600 or more images." While Fernandes was not responsible for 600 individual pictures and videos, under § 2G2.2, n.6(B)(ii), each video was considered to include 75 images. Thus, Fernandes was responsible for 991 images. "Based upon a total offense level of 34 and a criminal history category of I," Fernandes's guideline range was 151 to 188 months' imprisonment. The statutory term of imprisonment was 60 to 240 months.

Fernandes moved for a downward variance. He argued that he "ha[d] no interest in child pornography" and that his "sole purpose . . . was to induce [] Crow to send [him] sexual videos of himself," and that he was a first-time offender with no criminal history who was unlikely to reoffend. Fernandes then submitted a forensic evaluation, which indicated a six-percent chance of reoffending. He also submitted a polygraph examination, which suggested that Fernandes had never had a sexual interaction with someone under the age of 18.

The government opposed the motion, arguing that the nature and severity of the offense conduct justified a guideline sentence. The government pointed out that Fernandes "used child pornography as a type of currency" to trade for sexual videos of the adults with whom he chatted. The government also provided logs of Fernandes's texts to the district court. In the texts, Fernandes

talked about different underage boys with whom he had sex, said that he liked hearing young girls cry in pain during sex with adult men, and told Crow that he would hold down a young girl so that Crow could have sex with her.

During his sentencing hearing, Fernandes objected to the PSI's guideline calculation, arguing that the term "image" was unambiguous, so the court could not look to § 2G2.2, n.6(B)(ii), which defines a video as 75 images. Thus, Fernandes argued that he had fewer than 600 images, and so his guideline range should have been 108 to 135 months. The district court overruled Fernandes's objection, holding that "there is a strong case to be made . . . that the guideline is genuinely ambiguous and that" the guideline's commentary provides "a reasonable ratio that warrants deference[.]"

After hearing arguments from both sides regarding the appropriate sentence, the district court sentenced Fernandes to 188 months' imprisonment. The court stated it had considered the parties' statements, the advisory sentencing guidelines, the 18 U.S.C. § 3553(a) factors, the record, and the expert testimony offered on behalf of Fernandes. The court said that it viewed Fernandes's conduct as "horrific and vile and beyond the pale" and saw "no basis whatsoever for a downward variance." The court then stated that a sentence "at the high end of the guidelines [was] more than appropriate" and that "frankly a higher sentence than that would also be appropriate[.]"

In support of the sentence, the court said that, based on the messages, "it is clear . . . that [Fernandes] has a real interest in child abuse and in taking pleasure from child abuse." The court highlighted that Fernandes offered to hold children down "so that someone else c[ould] molest them," and that he would enjoy seeing them suffer. The court also highlighted that Fernandes offered to arrange for several individuals to meet in person with underage children. And the court referenced that Fernandes "discusse[d] his own sexual conduct with at least one minor boy[.]"

While the court said it considered the expert testimony and the polygraph examination, it said "the reliability of [polygraphs are] very debatable," and Fernandes's polygraph did not change its analysis of the § 3553(a) factors. The court said that it "considered the characteristics of [Fernandes], along with the need to protect the community, the danger [it saw] in [Fernandes's] conduct, as well as the need for specific and general deterrence[.]" The court also said that "to the extent a future Court were to determine that the 75:1 ratio is somehow invalid, [it] would impose the same sentence of 188 months' imprisonment regardless of that issue[.]"

Fernandes renewed his objection to the district court's reliance on the guideline commentary's 75:1 ratio for videos and argued that the sentence was substantively unreasonable.

## II.    Discussion

On appeal, Fernandes argues that the district court erred by treating the guideline commentary's 75:1 ratio for videos as valid and relying on it to calculate Fernandes's guideline range. After

careful review, any potential error in calculating the guideline range was harmless. Accordingly, we affirm.

We review the district court's interpretation and application of the sentencing guidelines *de novo*. *United States v. Dupree*, 57 F.4th 1269, 1272 (11th Cir. 2023) (en banc). If we decide that the district court misapplied the sentencing guidelines, "a remand is appropriate unless [we] conclude[], on the record as a whole, that the error was harmless, *i.e.*, that the error did not affect the district court's selection of the sentence imposed." *Williams v. United States*, 503 U.S. 193, 203 (1992); Fed. R. Crim. P. 52(a).

The district court can render a proposed guidelines error harmless by stating that it would have imposed the same sentence even if the defendant prevailed on that issue. *United States v. Keene*, 470 F.3d 1347, 1349–50 (11th Cir. 2006). In other words, we will not "set aside [a] reasonable sentence and send the case back to the district court [where] it has already [said] that it would impose exactly the same sentence, a sentence we would be compelled to affirm." *Id.* at 1350. That said, "[the] sentence imposed through the alternative or fallback reasoning of § 3553(a) must be reasonable." *Id.* at 1349. The appellant has the burden of showing that his sentence would be unreasonable under this alternative range. *Id.* at 1350.

When reviewing for substantive reasonableness, we review the sentence imposed by the district court under an abuse-of-discretion standard. *United States v. Irey*, 612 F.3d 1160, 1180 (11th Cir. 2010) (en banc). The appellant bears the burden of showing

that his sentence is unreasonable considering the totality of the record and the § 3553(a) factors. *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008). As a result of the "substantial deference district courts are due in sentencing," we will give the district court's "decisions about what is reasonable [a] wide berth and almost always let them pass." *Irey*, 612 F.3d at 1225.

In evaluating substantive reasonableness, the relevant § 3553(a) factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant"; (3) "the kinds of sentences available"; (4) the sentencing range; and (5) "the need to avoid unwarranted sentencing disparities among defendants with similar records" convicted of similar conduct. 18 U.S.C. § 3553(a)(1), (a)(2)(A), (a)(2)(B), (a)(2)(C), (a)(4), (a)(6); *see Gall v. United States*, 552 U.S. 38, 50 n.6 (2007). The district court must "state in open court the reasons for its imposition of the particular sentence" that it selects. 18 U.S.C. § 3553(c).

We have emphasized that "we must give due deference to the district court" to consider and weigh the proper § 3553(a) sentencing factors. *United States v. Shabazz*, 887 F.3d 1204, 1224 (11th Cir. 2018) (quotations omitted). The district court does not have to give all the factors equal weight and is given discretion "to attach great weight to one factor over others." *United States v.*

*Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015) (quotation omitted). Though the district court must consider all the § 3553(a) factors, "[a]n acknowledgement the district court has considered the defendant's arguments and the § 3553(a) factors will suffice." *Gonzalez*, 550 F.3d at 1324. Along with the § 3553(a) factors, the district court should also consider the relevant conduct and particularized facts of the defendant's case and the sentencing guidelines. *Rosales-Bruno*, 789 F.3d at 1259-60. The district court maintains discretion to give heavier weight to any of the § 3553(a) factors or a combination of factors than to the sentencing guidelines. *Id.* at 1259.

The district court also has wide discretion to decide whether the § 3553(a) factors justify a variance. *Gall*, 552 U.S. at 51. In imposing a variance, the district court can contemplate conduct already considered when calculating the guideline range. *United States v. Johnson*, 803 F.3d 610, 619 (11th Cir. 2015). Though a major variance should be supported by a more significant justification than a minor variance, the district court need not account for every § 3553(a) factor, nor must it discuss each factor and the role that it played in sentencing. *Gall*, 552 U.S. at 50–54. "[A]n indicator of a reasonable sentence[]" is one that is "well below the statutory maximum" for the crime. *United States v. Dougherty*, 754 F.3d 1353, 1362 (11th Cir. 2014).

We need not reach the merits of Fernandes's argument related to the district court applying a 5-level enhancement based on § 2G2.2, n.6(B)(ii), because any error in calculating his guideline

range was harmless.  During sentencing, the district court said that the disputed guidelines issue did not affect its ultimate sentence, explaining, "to the extent a future Court were to determine that the 75:1 ratio is somehow invalid, [it] would impose the same sentence of 188 months' imprisonment regardless of that issue[.]" *See Keene*, 470 F.3d at 1349–50.  Thus, for purposes of this opinion, we will assume there was a guidelines error and "then ask whether the final sentence . . . would still be reasonable" under the § 3553(a) factors considering that alternative guideline range, which would be 108 to 135 months.  *Id.* at 1349.

Considering the relevant § 3553(a) factors, Fernandes's 188-month sentence would still be substantively reasonable under the alternative range of 108 to 135 months.  The district court began by stating that it had considered the parties' statements, the advisory sentencing guidelines, the § 3553(a) factors, the expert testimony, and the record.  *See Rosales-Bruno*, 789 F.3d 1259–60.  The court then undertook an extensive explanation of how it arrived at the sentence on the record, focusing on the nature of the offense conduct.  *Johnson*, 803 F.3d at 619.

The court described Fernandes's conduct as "horrific and vile and beyond the pale."  It stated that a sentence at the high end of the guideline range was "more than appropriate" and that "frankly a higher sentence than that would also be appropriate[.]"  The court highlighted that, based on the messages, "it is clear . . . that [Fernandes] has a real interest in child abuse and in taking pleasure from child abuse."  For example, the court referenced

messages where Fernandes (1) offered to hold children down "so that someone else c[ould] molest them"; (2) said he would enjoy seeing them suffer; (3) offered to arrange for several individuals to meet in person with underage children; and (4) "discusse[d] his own sexual conduct with at least one minor boy[.]"

The district court did not find the mitigating evidence compelling enough to warrant a lower sentence. For example, it said Fernandes's polygraph did not change its analysis of the § 3553(a) factors because it believed "the reliability of [polygraphs are] very debatable[.]" The court said that it "considered the characteristics of [Fernandes], along with the need to protect the community, the danger [it saw] in [Fernandes's] conduct, as well as the need for specific and general deterrence[.]" The court maintained its discretion to give heavier weight to these factors rather than the mitigating factors. *Rosales-Bruno*, 789 F.3d at 1254, 1259. Furthermore, Fernandes's sentence of 188 months' imprisonment is well below the statutory maximum of 240 months' imprisonment, which is "an indicator of a reasonable sentence." *Dougherty*, 754 F.3d at 1364. Thus, it cannot be said that the court "committed a clear error of judgment in weighing the § 3553(a) factors[.]" *Irey*, 612 F.3d at 1190.

Ultimately, because the district court stated it would have given him the same sentence regardless of the outcome of the guidelines commentary issue, and because an upward-variance sentence of 188 months from an alternative guideline range of 108 to 135 months would still be reasonable, any potential error in

calculating the guideline range based on § 2G2.2, n.6(B)(ii) was harmless. *See Keene*, 470 F.3d at 1349–50. Accordingly, we affirm.

**AFFIRMED.**