[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 23-11505

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

BERNARD SHAW,
a.k.a. BERNARD LAQUAI SHAW,
a.k.a. BERNARD L SHAW,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Middle District of Georgia

D.C. Docket No. 4:22-cr-00018-CDL-MSH-2

_____

Before LUCK, ANDERSON, and HULL, Circuit Judges.

PER CURIAM:

After pleading guilty, defendant Bernard Shaw appeals his 60-month total sentence for two counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). At sentencing, the district court imposed a 14-month upward variance from the top of the advisory guidelines range of 37 to 46 months. On appeal, Shaw argues that his 60-month sentence is substantively unreasonable because the district court improperly weighed the sentencing factors, focused primarily on his history, characteristics and offense conduct, and failed to give adequate consideration to the advisory guidelines range. After review, we affirm Shaw's sentence.

## I.    BACKGROUND FACTS

### A.    April 2022 Traffic Stop

In April 2022, police officers observed a black 2007 Ford Mustang with illegally tinted windows. They also smelled a strong odor of marijuana coming from the Mustang. The officers attempted to pull the vehicle over, but the driver refused to stop. Eventually, the driver stopped and parked the vehicle, and the driver and the passenger exited the vehicle.

The officers approached them in the yard of the house where they parked. The officers asked the driver, Tyquerrious

Ford, for his license. Ford said he did not have his license with him, refused to identify himself, and attempted to walk toward the house. Ford was detained.

One officer approached the passenger side of the vehicle to initiate a search. Defendant Shaw, who had exited from the passenger side, leaned against the passenger door to prevent the officer from opening it. The officer grabbed Shaw's wrist, but Shaw escaped the officer's grasp and fled the scene.

A search of the car revealed: (1) a loaded Glock Model 17 pistol, equipped with an extended 31-round magazine, in the driver's seat; (2) a green bookbag containing a Springfield XD semiautomatic pistol and two bags of suspected marijuana in the front passenger seat; and (3) a black bookbag containing three vacuum-sealed bags of suspected marijuana, an electronic scale, and approximately 100 small baggies in the backseat. The loaded Glock Model 17 was illegally modified with an automatic selector switch.[1] The Springfield XD semiautomatic pistol was a stolen weapon.

Ford was taken to the Muscogee County Jail, and officers attempted to identify and locate defendant Shaw. Following Ford's arrest, he claimed ownership of the black bookbag and its contents.

---

[1] An automatic selector switch allows the operator of the firearm to continuously fire bullets with one pull of the trigger.

**B.    July 2022 Execution of Arrest Warrants**

On April 26, 2022, officers secured arrest warrants for defendant Shaw for: (1) possession of marijuana with intent to distribute; (2) possession of a firearm during the commission of certain crimes; (3) theft by receiving a stolen firearm; (4) possession of dangerous weapon (machine gun); (5) possession of drug related objects; and (5) obstruction of an officer.

In July 2022, more than two months after officers secured Shaw's arrest warrants, Shaw was found in an AutoZone parking lot in Columbus, Georgia. Shaw was sitting in the passenger seat of a white Dodge Challenger. Shaw was detained. Officers found a loaded black Del-Ton 5.56 semiautomatic rifle in the passenger seat where Shaw was sitting. The rifle was modified so that it would hold two taped-together 30-round magazines. The rifle was loaded with 37 rounds of ammunition and was outfitted with a brass catcher.[2]

Shaw was arrested and the rifle was seized.

**C.    Indictment and Guilty Plea**

In August 2022, a federal indictment charged Shaw with two counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The first count ("Count 3")

---

[2] A brass catcher "is a device designed to capture spent bullet casings, often made of brass, as they are ejected from a firearm."

was the firearm possession in April 2022 and the second count ("Count 4") was the firearm possession in July 2022.

On December 7, 2022, Shaw pleaded guilty to both counts of possession of a firearm by a convicted felon without a written plea agreement.

## D.    Presentence Investigation Report

Shaw's presentence investigation report ("PSI") calculated a total offense level of 19 and a criminal history category of III. Shaw received two criminal points for two prior felony convictions for (1) receiving stolen property over $500 and driving without a license and (2) three counts of receiving stolen property over $500, two counts of theft by unlawful taking (motor vehicle), two counts of fleeing or evading police in the second degree, and leaving the scene of an accident. Shaw received two additional criminal history points because he committed the instant offenses while on probation, for a total criminal history score of four. Shaw also had a juvenile criminal history, for which he received no criminal history points, consisting of adjudications of delinquency for (1) aggravated child molestation and aggravated sodomy of a nine-year-old girl (when he was 11 years old) and (2) burglary (when he was 15 years old), and (3) theft by taking (when he was 15 years old).

Shaw's advisory guidelines range was 37 to 46 months' imprisonment. The PSI stated that the district court could consider, in determining whether Shaw merited an upward-variance sentence: (1) the nature of his offense; (2) his significant

and dangerous criminal history; (3) his continued criminal conduct while on court supervision; and (4) his personal history.

The PSI reported that according to documents from the Muscogee County Sheriff's office, Shaw was "a verified member of the criminal street gang Zohannon." While Shaw dropped out of high school, he informed the probation officer that he obtained his G.E.D. while in a youth detention center in Dalton, Georgia. Shaw reported that he had a full-time job at the Kia assembly plant in West Point, Georgia, from February to May 2022. Shaw reported that he supported himself by working odd jobs and uploading his rap music to various internet sites.

### E.    Sentencing

On April 13, 2023, the district court held a sentencing hearing. Shaw filed no written objection to the final PSI. And at sentencing, Shaw's counsel stated she had no objections to the guidelines calculations in the PSI. But as to the PSI's discussion of factors that might warrant an upward variance, Shaw's counsel stated that the majority of his criminal history occurred when he was a juvenile and that he was already adjudicated for that conduct. Shaw's counsel stated that his two prior felony convictions that were factored into his criminal history category resulted "from being around the wrong people in Kentucky." Shaw's counsel also noted that the instant offenses were "his very first violent crime[s] involving a firearm."

Shaw's counsel emphasized that he was only 23 years old, had a young child, and that once he was released, he intended to

find a job and leave Columbus for somewhere he could start fresh and get back on the right path. Shaw apologized for his actions and expressed his desire to be there for his daughter in the long run.

The district court inquired into: (1) Shaw's education and employment history; (2) Shaw's purported gang membership; (3) his reasons for possessing the firearms; and (4) the government's position on an upward variance. After this discussion, the district court noted that it had considered the advisory sentencing guidelines range and found it "inadequate." The district court stated that it was choosing to vary upward based upon the factors in 18 U.S.C. § 3553(a), "particularly the nature and circumstances of the offense and the history and characteristics of [Shaw]." The district court determined that an upward-variance sentence was necessary to accomplish the purpose of the § 3553(a) factors as well as to protect the public. The district court sentenced Shaw to 60-month terms of imprisonment on each conviction to run concurrently. Shaw objected to the procedural and substantive reasonableness of his sentence.

## II.    DISCUSSION

On appeal, Shaw now challenges only the substantive reasonableness of his sentence.[3]

---

[3] On appeal, Shaw does not challenge his convictions.

## A.     Substantive Reasonableness

"We review the substantive reasonableness of a sentence for abuse of discretion, considering the totality of the circumstances." *United States v. Oudomsine*, 57 F.4th 1262, 1266 (11th Cir. 2023). As the party challenging the sentence, Shaw bears the burden of showing that the district court's chosen sentence was an abuse of discretion based on the record and the 18 U.S.C. § 3553(a) factors.[4] *See id.*; *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008).

In reviewing whether the district court abused its discretion, we will not reverse a sentence solely because we could reasonably conclude that a different sentence was more appropriate. *Gall v. United States*, 552 U.S. 38, 51 (2007). Rather, we will vacate a sentence only if we are left with a "definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."

---

[4] The § 3553(a) sentencing factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) to afford adequate deterrence to criminal conduct; (4) to protect the public from further crimes of the defendant; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the applicable Sentencing Guidelines range and the kinds of sentences available; (7) the pertinent policy statements of the Sentencing Commission; (8) the need to avoid unwarranted sentencing disparities; and (9) the need to provide restitution to the victims. 18 U.S.C. § 3553(a); *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007).

*United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (quotation marks omitted).

"The weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court." *United States v. Johnson*, 803 F.3d 610, 618 (11th Cir. 2015). While the district court must consider all § 3553(a) factors, it is permitted to attach "great weight" to one factor over others. *United States v. Overstreet*, 713 F.3d 627, 638 (11th Cir. 2013) (quotation marks omitted). Additionally, "[p]lacing substantial weight on a defendant's criminal record is entirely consistent with § 3553(a) because five of the factors it requires a court to consider are related to criminal history." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1263 (11th Cir. 2015).

In imposing an upward variance, the district court is permitted to "consider conduct that a probation officer already had considered in calculating the defendant's advisory guidelines range." *Johnson*, 803 F.3d at 619 (quotation marks omitted). The district court may impose an upward variance if it concludes that the guideline range "understated" a defendant's criminal history. *United States v. Osorio-Moreno*, 814 F.3d 1282, 1288 (11th Cir. 2016). The district court generally has "broad leeway in deciding how much weight to give to prior crimes the defendant has committed." *Rosales-Bruno*, 789 F.3d at 1261.

## B.    Shaw's 60-Month Sentence

On appeal, Shaw argues his 60-month sentence is substantively unreasonable because the district court improperly

weighed the § 3553(a) sentencing factors, focused primarily on his history, characteristics, and offense conduct, and failed to give adequate consideration to the advisory guidelines range. Shaw contends that his guidelines range adequately accounted for his conduct and criminal history and therefore, the district court's upward variance constitutes an abuse of discretion.

Shaw has not shown that the 14-month upward variance is substantively unreasonable. During Shaw's sentencing hearing, the district court stated that it had considered the § 3553(a) factors and the advisory guidelines range of 37 to 46 months' imprisonment. In varying upward, the district court relied on the following: (1) the nature and circumstances of Shaw's two instant firearm offenses; (2) Shaw's history and characteristics; and (3) the need to protect the public. The district court was entitled to give significant weight to these factors. *See* 18 U.S.C. § 3553(a)(1); *Johnson*, 803 F.3d at 618.

Moreover, the district court did not commit a clear error of judgment in concluding that a sentence within the advisory guidelines range was inadequate in light of those factors, which included Shaw's commission of two § 922(g) firearm offenses within three months; his attempt to prevent officers from searching the Ford Mustang; his subsequent flight from the officers; his possession of both extended magazines and a brass catcher; and his pattern of criminal activity, which included crimes that were not assessed criminal-history points because of his status as a juvenile. *See Johnson*, 803 F.3d at 618; *Rosales-Bruno*, 789 F.3d at 1261.

23-11505               Opinion of the Court                11

Here, there is ample evidence in Shaw's background and relevant conduct to implicate strongly the need to protect the public, for deterrence, and to promote respect for the law. *See* 18 U.S.C. § 3553(a)(2)(A), (a)(2)(B), (a)(2)(C).

## III.   CONCLUSION

For these reasons, we conclude that Shaw has not shown that his 60-month sentence is substantively unreasonable. We therefore affirm.

**AFFIRMED.**