[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-13234

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JASON R. MOORE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:22-cr-00082-MCR-1

_____

Before ROSENBAUM, GRANT, and HULL, Circuit Judges.

PER CURIAM:

After pleading guilty, defendant Jason Moore appeals his sentence for two counts of engaging in and attempting to engage in illicit sexual conduct in foreign places with a minor, in violation of 18 U.S.C. §§ 2423(c), 2423(e), and 3238. Moore, a minister and father, sexually abused his adopted minor daughter weekly for approximately 10 years, including when they were on mission trips abroad. The district court imposed the statutory maximum of 30 years' imprisonment on each count, to run consecutively, for a total 720-month sentence. On appeal, Moore argues that his sentence is procedurally and substantively unreasonable. After review, we affirm Moore's 720-month sentence.

## I.    BACKGROUND

We outline the facts as admitted by Moore in a signed factual proffer or unobjected to in his presentence investigation report ("PSI").

### A.    Offense Conduct

Moore engaged in a pattern of sexual abuse of his adopted minor daughter ("Victim 1"), including vaginal intercourse, over an almost 10-year period. When Victim 1 was approximately six years old, her mother married Moore. Thereafter, Moore adopted Victim 1 and her biological sister ("Victim 2"). When Victim 1 was

approximately eight years old, she and her family moved to Pensacola, Florida, so that Moore could attend seminary school.

At this time, Moore began to sexually abuse Victim 1. The abuse started with Moore touching Victim 1's "private areas" through her clothes and eventually led to Moore putting his hands down Victim 1's pants and touching her bare vagina with his hand. During this time, Moore abused Victim 1 weekly. Moore would tell Victim 1 that "[i]t'll be our little secret" or other words to that effect.

Approximately three years later, when Victim 1 was 11 years old, the family moved to Shelby, New York. Moore began vaginally penetrating Victim 1 with his fingers. Moore also would masturbate to the point of ejaculation while digitally penetrating Victim 1. During this time, Moore abused Victim 1 "at least weekly."

On March 21, 2013, when Victim 1 was 15 years old, the family traveled to Fiji for a month. While in Fiji, the family rented a house. Moore and Victim 1 were sometimes alone in the house while Victim 1's mother, sister, and two half siblings traveled around the island. Throughout the Fiji trip, when alone with Victim 1, Moore would sexually assault her.

When Victim 1 was approximately 16 years old, her family traveled throughout the United States and Canada to raise money through their church to become missionaries and move to Fiji. This fundraising trip lasted approximately one year, during which Moore continually sexually assaulted Victim 1.

After the fundraising trip, the Moore family briefly moved back to Shelby, New York.  Moore continued to sexually abuse Victim 1 on a weekly basis.

In 2015, when Victim 1 was 17 years old, the family traveled to the Outer Banks, North Carolina.  On October 12, 2015, while on this trip, Moore had non-consensual vaginal sexual intercourse with Victim 1 for the first time.  Moore physically manipulated Victim 1's body to place her into positions for intercourse.

On January 17, 2016, when Victim 1 was 17 years old, the family moved to Suva, Fiji to partake in missionary work.  While the Moore family lived in Fiji, Moore continued to sexually abuse Victim 1, including by vaginal intercourse.  The sexual abuse did not stop until Victim 1 moved out of the Moore residence and to a different location in Fiji.

Years later, Victim 1 began going to counseling, where she shared about her sexual abuse for the first time.  This gave Victim 1 the courage to report the sexual abuse to law enforcement.

B.    **Investigation into Moore**

On September 21, 2022, Victim 1 conducted a covert consensually recorded phone call to Moore in the presence and under the direction of the New York State Police.  During the over 40-minute call, Victim 1 confronted Moore about his sexual abuse of her. Victim 1 stated that she was in counseling and certain things had come to light.  Victim 1 told Moore that she needed an apology.  Moore responded that he lives in "hell" daily for what he did.

Moore apologized, stating, "With all my soul [Victim 1], I am sorry." Moore also said, "I don't expect you to understand . . . I'm a tormented person over things that were done to me, and things that I have done myself." Victim 1 asked Moore why he did "it" to her. Moore replied that he did not know what natural love was.

Victim 1 told Moore that he "raped" her, to which Moore stated, "[y]ou asked me for an apology so you can move forward." Moore continued to apologize to Victim 1. Victim 1 asked Moore if he ever sexually assaulted any of her siblings. Moore falsely denied sexually abusing any of Victim 1's siblings.

At one point in the conversation, Moore stated that he did not think what he did to Victim 1 was "okay," but stated that maybe he just needed a release. Moore told Victim 1 that he loved her and never meant to hurt her. Moore also told Victim 1 that she had more guts than he had because she was "facing it." At no point in the conversation did Moore deny sexually abusing Victim 1.

On October 10, 2022, the New York State Police interviewed Victim 1's biological sister, Victim 2, who is two years older than Victim 1. Victim 2 told the New York State Police that she also was sexually abused by Moore, but did not wish to be a complainant.

Victim 2 stated that Moore began sexually abusing her when she was 10 or 11 years old when the family resided in Pensacola, Florida. Moore's abuse of Victim 2 began with Moore touching Victim 2 underneath her clothes, on her vagina with his bare hand. This would occur on a monthly basis in Victim 2's bedroom. On

one occasion, when Victim 2 was approximately 13 years old, Moore placed Victim 2 on his lap while in his bedroom, both with their clothes on, and had her rub her buttocks onto his penis. Victim 2 recalled Moore being sexually aroused.

When the Moore family moved to Shelby, New York, Victim 2 was approximately 13 years old. Moore continued to sexually abuse Victim 2 on a monthly basis. On one occasion, in Moore's bedroom, Moore had Victim 2 sit on his lap. Moore was wearing only his underwear and Victim 2 was wearing only a skirt and underwear. Moore had Victim 2 rub her buttocks onto his penis until he ejaculated. Moore would also make Victim 2 masturbate him with her hand.

Approximately a year later, Moore attempted to have Victim 2 perform oral sex on him and have anal sex with him. Victim 2 was able to decline.

Victim 2 said that Moore's abuse never escalated to oral, vaginal, or anal sex, in part because she developed a long-term illness around age 16. At that point, Moore started to leave her alone.

The New York State Police sent Homeland Security Investigations an investigative referral regarding Moore and his acts against Victim 1.

On or about December 2, 2022, law enforcement interviewed Moore's wife, April Moore, under oath. April Moore stated that Moore confessed to having an affair in 2017 but would not disclose who the affair was with. April Moore had suspicions

that Moore (1) had engaged in illicit sexual conduct with Victim 1 and (2) had an inappropriate relationship with a juvenile victim in the past. April Moore also shared that Victim 2 told her that Victim 2 did not like the way Moore kissed Victim 2.

April Moore stated that Moore was verbally and physically abusive, threatened to kill her, and that her children witnessed some of the abuse, including when Moore threatened to kill her. April Moore said that Moore would go into a rage when she refused to have sex with him and that she feared he would seek out a juvenile victim after these incidents.

## C.    Grand Jury Charges and Plea

On December 13, 2022, a federal grand jury charged Moore with two counts of engaging in and attempting to engage in illicit sexual conduct in foreign places with "Minor Female 1," in violation of 18 U.S.C. §§ 2423(c), 2423(e), and 3238. Count 1 referred to the sexual abuse of Victim 1 that occurred in Fiji from about March 21, 2013, to April 25, 2013, during the Moore family's month long trip. Count 2 referred to the sexual abuse of Victim 1 that occurred in Fiji from about January 17, 2016, to February 8, 2016, when the Moore family moved to Fiji. Moore pled not guilty.

Later, pursuant to a written plea agreement, Moore pled guilty to both charges, and the government agreed not to file any further criminal charges against Moore "arising out of the same transactions or occurrences to which [Moore] has pled."

The plea agreement noted that, for each count, Moore faced "up to thirty (30) years' imprisonment, a mandatory five years up

to a lifetime of supervised release, a fine up to $250,000, and a $100 special monetary assessment." The parties reserved the right to appeal any sentence imposed.

A magistrate judge conducted Moore's change-of-plea hearing and recommended that his plea be accepted. There were no objections to the magistrate judge's Report and Recommendation, and the district court accepted Moore's guilty plea.

### D.    Presentence Investigation Report

As to Moore's background, the PSI noted, among other things, that he described his childhood homelife as "awful." His parents abused drugs and alcohol, and his father sold drugs from their home and was arrested for trafficking drugs in 1985. Beginning at about 10 years old, Moore was sexually abused repeatedly by his maternal uncle and by his teenage brother and sister when he was around 12 years old.

The PSI calculated a total offense level of 40 for each count, consisting of: (1) a base offense level of 30, pursuant to U.S.S.G. § 2A3.1; (2) a four-level increase, pursuant to U.S.S.G. § 2A3.1(b)(2),[1] because Moore began abusing Victim 1 when she was eight years old and first digitally penetrated her when she was 11 years old; (3) a two-level increase, pursuant to U.S.S.G.

---

[1] The PSI cited to U.S.S.G. § 2A3.1(b)(1), but the parties agree that this is a scrivener's error that did not change the calculation and should have been the applicable subsection (b)(2).

§ 2A3.1(b)(3),[2] because Victim 1 was Moore's adopted daughter; (4) a two-level increase, pursuant to U.S.S.G. § 3D1.4, for a multiple count adjustment; (5) a five-level increase, pursuant to U.S.S.G. § 4B1.5(b)(1), because Moore "engaged in a pattern of activity involving prohibited sexual conduct"; and (6) a three-level decrease for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a) and (b).

Moore's total offense level of 40 and criminal history category of I, yielded an advisory guidelines range of 292 to 365 months' imprisonment.

The PSI noted that there were factors that may warrant a departure under U.S.S.G. § 5K2.0(a)(1)(B). Section 5K2.0(a)(1)(B) provides for a departure in "child crimes and sexual offenses" where "there exists an aggravating circumstance, of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described." U.S.S.G. § 5K2.0(a)(1)(B). The PSI stated that Moore's "guideline[s] calculation fails to take into consideration the length of time in which [Moore] sexually abused his victims" and failed to "consider the number of victims."

---

[2] The PSI cited to U.S.S.G. § 2A3.1(b)(2), rather than the applicable subsection (b)(3), but this appears to be a scrivener's error that did not change the calculation.

In a separate section, the PSI also noted that there were factors that may warrant a "variance" under § 3553(a).

Moore did not dispute the PSI's facts or its guidelines calculation except for the PSI's suggestion that an upward departure under U.S.S.G. § 5K2.0(a)(1)(B) may be warranted. Moore argued no departure was appropriate because (1) the five-level increase under U.S.S.G. § 4B1.5 "adequately account[ed] for the length of the offense conduct and the number of victims" and (2) "[u]pward departures under U.S.S.G. § 5K2.0(a)(1)(B) should be applied 'rarely and only in exceptional cases,'" quoting U.S.S.G. § 5K2.0 cmt. n.3(A)(ii) and 3(B)(i).

Moore also filed a separate sentencing memorandum that requested a sentence of 292 months' imprisonment, at the low end of the advisory guidelines range of 292 to 365 months, and outlined why a 292-month sentence was appropriate.

In response, the government submitted a victim impact statement from Victim 1 and argued that an upward departure may be warranted.

E.    **Victim Impact Statement**

Victim 1's impact statement outlined "the true depth and lasting effects that [she] suffered from being both physically and mentally abused by [Moore]." Victim 1 stated that she finally escaped Moore after he physically and mentally abused her "for years on end."

In late 2022, Victim 1 began speaking with a counselor. Through counseling, Victim 1 realized that Moore's abuse was the root of her anxiety, depression, and PTSD. Victim 1 stated that due to Moore's abuse, she (1) had her childhood stolen, (2) was in abusive relationships "due to not knowing anything different," (3) was on medication for anxiety and depression, (4) had difficulty trusting people, (5) suffered from chronic migraines that began as a child, and (6) suffered from extreme PTSD. Victim 1 concluded by stating that Moore is a "monster who is not rehabilitatable" and "will, without any doubt, molest another innocent child the first chance he gets."

## F.    Sentencing

In his sentencing memorandum, Moore argued that his advisory guidelines range of 292 to 365 months already reflected his culpability because of the multiple increases in his offense level based on the victim's age, the victim being in his care and control, and the pattern of ongoing activity. In addition, his memorandum argued that (1) Moore experienced significant childhood trauma; (2) his actions showed acceptance of responsibility; and (3) he was a low risk for recidivism. As to his recidivism risk, Moore attached Dr. Ronda Harrison-Spoerl's psychosexual risk assessment of Moore. Dr. Spoerl classified Moore as a "low risk for sexual recidivism." The risk assessment opined that if Moore were released from prison after the age of 60, his recidivism risk would fall significantly, putting him at the same risk as "men who had never previously been charged or convicted of a sexual offense."

At the sentencing hearing, Moore's attorney stated that beyond his objection to the PSI's suggested departure and arguments made in his sentencing memorandum, he had no additional arguments regarding an upward variance or departure. Moore's attorney then presented argument regarding the § 3553(a) factors, including (1) Moore's acceptance of responsibility, (2) the fact that the offense conduct ended more than five years ago, (3) Moore's low risk for recidivism, and (4) the punishment necessary under the § 3553(a) factors. Next, Moore allocuted and expressed regret for his actions.

In response, the government addressed the different levels of child sex offenses and the punishments usually received, highlighted that Moore was a hands-on offender—the worst crime of the child sex offenses—and emphasized that in the three years between the 2013 and 2016 crimes charged, "an incalculable amount of victimizations took place." The government also expressed concern over Dr. Spoerl's risk assessment, which noted that Moore has not engaged in prior sex offenses. The government argued that Moore had engaged in sex offenses for 10 years and was just "never caught." The government also read Victim 1's impact statement, without objection.

Ultimately, the district court found that this was an "extraordinary case" that warranted a departure from the advisory guidelines range. The district court noted that she was not sure that, in 20 years, she had sentenced anyone who had abused another individual for the length of time that Moore abused his

victims.  The district court agreed with the government that the sexual abuse continuing for so many years and involving two minor victims took Moore's case "to another level."

The district court also found that an upward departure was justified because of (1) the length of time that Moore abused his victims, (2) the number of victims, (3) the number of instances of abuse—"hundreds of occasions of forced sexual abuse of minors who were in [Moore's] care," (4) Moore's status as a minister, (5) Moore's status as the victims' parent, (6) the nature of the abuse, including vaginally penetrating Victim 1 at 11 years old, and (7) the amount of trauma and fear that the victims repeatedly experienced, which caused them shame, guilt, distrust, and unhealthy relationships.

The district court further found that these circumstances "demand[] a sentence that is the maximum that the law allows" and therefore applied an upward departure under the advisory guidelines to reach an appropriate and just sentence.  The district court imposed the statutory maximum of 30 years' imprisonment for each count, to run consecutively.

Notably, the district court also stated that in any event, "[t]he same sentence would be imposed under [18 U.S.C. §] 3553(a)" for the same reasons the district court stated for the departure.

After imposing the sentence, the district court asked whether Moore had any objections other than those already made, and his attorney said that he did not.

## II.    STANDARD OF REVIEW

We use a two-step process to review the reasonableness of a sentence imposed by the district court. *United States v. Cubero*, 754 F.3d 888, 892 (11th Cir. 2014). First, we determine whether the sentence is procedurally sound. *Id.* Assuming it is, we then examine whether the sentence is substantively reasonable given the totality of the circumstances and the sentencing factors set out in 18 U.S.C. § 3553(a). *Id.* At both steps of the process, the party challenging the sentence bears the burden of showing that the sentence is unreasonable. *United States v. Pugh*, 515 F.3d 1179, 1189 (11th Cir. 2008).

Generally, when reviewing for procedural reasonableness, we review legal issues *de novo*, factual findings for clear error, and the district court's application of the guidelines to the facts with due deference, which is akin to clear error review. *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010). But, where a defendant fails to object at sentencing, we review procedural reasonableness for plain error. *United States v. Grady*, 18 F.4th 1275, 1293 (11th Cir. 2021).

"We review the substantive reasonableness of a sentence for abuse of discretion, considering the totality of the circumstances." *United States v. Oudomsine*, 57 F.4th 1262, 1266 (11th Cir. 2023).

### III.    PROCEDURAL REASONABLNESS

### A.    Guidelines Calculation – Plain Error Review

####     1.    U.S.S.G. § 2A3.1(b)(2)

Moore contends that the district court miscalculated his advisory guidelines range by erroneously applying a four-level increase to his offense level pursuant to U.S.S.G. § 2A3.1(b)(2) on the ground that Victim 1 was not yet 12 years old when the abuse began.

Section 2A3.1(b)(2) provides that a defendant's base offense level of 30 under U.S.S.G. § 2A3.1(a)(2) increases by four levels if "the victim had not attained the age of twelve years" or by two levels if "the victim had attained the age of twelve years but had not attained the age of sixteen years." U.S.S.G. § 2A3.1(b)(2)(A)-(B). The charged crimes occurred when Victim 1 was 15 years old in 2013 and 17 years old in 2016. Moore argues that the "earlier, uncharged sexual abuse (when the victim was less than 12 [years old]) was not relevant conduct" and should not have been considered for purposes of applying the four-level increase. Instead, Moore argues that his offense level "should have only been increased by 2 points" because Victim 1 was 15 years old during the 2013 trip to Fiji. *See* U.S.S.G. § 2A3.1(b)(2)(B).

####     2.    Plain Error Review

Moore acknowledges that he did not object to the four-level increase under U.S.S.G. § 2A3.1(b)(2). Thus, we review this guidelines issue for plain error. *See Grady*, 18 F.4th at 1293.

To prevail on plain error review, the defendant must show: (1) an error occurred; (2) the error was plain; and (3) the error affected substantial rights. *United States v. Steiger*, 99 F.4th 1316, 1324 (11th Cir. 2024) (en banc). If the defendant makes this showing, we have discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

An error is plain if "the explicit language of a statute or rule or precedent from the Supreme Court or this Court directly resolves the issue" and establishes that an error has occurred. *United States v. Innocent*, 977 F.3d 1077, 1081 (11th Cir. 2020) (quotation marks omitted and alteration adopted). An error affects the defendant's substantial rights if there is a "reasonable probability that, but for the error, the outcome" of the sentencing proceeding would have been different. *Rosales-Mireles v. United States*, 585 U.S. 129, 134-35 (2018) (quotation marks omitted); *see also United States v. Malone*, 51 F.4th 1311, 1319 (11th Cir. 2022) (stating a defendant's substantial rights are affected if an error "affected the outcome of the district court proceedings" (quotation marks omitted)).

3.    Analysis

When applying the guidelines, the district court shall consider "the offense of conviction and all relevant conduct under § 1B1.3." U.S.S.G. § 1B1.1, cmt. n.1(I); *United States v. Utsick*, 45 F.4th 1325, 1334 (11th Cir. 2022) ("Generally speaking, . . . the proper calculation of the guidelines requires the district court to

consider 'all relevant conduct,' not merely charged conduct."). Section 1B1.3(a) defines "relevant conduct" for determining offense conduct and adjustments. U.S.S.G. § 1B1.3(a). The applicable "relevant conduct" definition here, which is contained in U.S.S.G. § 1B1.3(a)(2), provides that relevant conduct includes: "solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.* § 1B1.3(a)(2).

Defendant Moore argues the district court erred in considering his earlier sexual abuse of Victim 1 before age 12 as relevant conduct under § 1B1.3(a)(2) because those acts constituted "discrete, identifiable units" apart from the later sexual abuse of Victim 1 charged in the indictment and thus "would not be grouped together" under § 3D1.2(d). To support his argument, Moore relies on *United States v. Maxwell*, 34 F.3d 1006 (11th Cir. 1994). But *Maxwell* addressed whether a defendant's prior cocaine distribution was part of the same course of conduct as his charged dilaudid distribution conspiracy. 34 F.3d at 1011 (concluding cocaine distribution involved isolated, unrelated events that merely happened to be similar in kind and did not constitute a single course of conduct for purposes of relevant conduct under § 1B1.3(a)(2)). Obviously, *Maxwell* did not address whether a defendant father's weekly and ongoing sexual abuse of his same minor victim adopted daughter over a period of ten years is part of the same course of conduct. *Maxwell* thus does not "directly resolv[e] the issue" Moore raises here. *See Innocent*, 977 F.3d at

1081.  Moore cites no sexual abuse case at all, much less one like here, and thus Moore has not shown any alleged error, much less one that was plain.

Alternatively, even assuming (1) the abuse of Victim 1 before age 12 should not have been considered, (2) plain error is shown, and (3) Moore's adjusted offense level should be 38 not 40, Moore has not shown that such error affected his substantial rights.  To make this showing, Moore must demonstrate that there is a "reasonable probability that, but for the error, the outcome" of his sentencing proceeding would have been different.  *Rosales-Mireles*, 585 U.S. at 134-35 (quotation marks omitted); *see also Malone*, 51 F.4th at 1319.  The district court's own statements show that there is no "reasonable probability that, but for the [alleged] error, the outcome" of the sentencing proceeding would have been different.  *See Rosales-Mireles*, 585 U.S. at 134-35 (quotation marks omitted); *see also Malone*, 51 F.4th at 1319.  Multiple times, the district court stated that the statutory maximum was necessary based on Moore's hands-on sexual abuse of two victims over such long periods of time.

Moore explicitly acknowledges as much.  Although Moore argues that the district court miscalculated his guidelines range, he recognizes that "the error o[f] the [g]uideline[s] range did not appear to affect the district court's sentence."  The district court imposed consecutive statutory maximum sentences on each count, the maximum the law would allow.  Given the record and the district court's clear statements, we cannot conclude there is a

23-13234                Opinion of the Court                19

reasonable probability that the district court would have imposed a different sentence if it had applied the two-level increase, instead of the four-level increase, under U.S.S.G. § 2A3.1(b)(2) and calculated an advisory guidelines range of 235 to 293 months, as opposed to 292 to 365 months.[3]

## B.    Oral Explanation for the Upward Variance

Moore also argues the district court did not adequately explain the reasons, much less give compelling reasons, for his 720-month sentence, resulting in procedural error, too. As to procedural reasonableness, Moore argues the guidelines already accounted for Victim 1's age, his father status, and his repeated pattern of activity, and the district court gave no other compelling reasons to justify the 720-month sentence.

---

[3] As noted above, the applicable relevant conduct definition applies only to offenses for which multiple counts must be grouped under U.S.S.G. § 3D1.2(d). U.S.S.G. § 1B1.3(a)(2). While not raised by Moore, we note another potential issue about the district court's guidelines calculation—that U.S.S.G. § 3D1.2(d) specifically excludes from its operation "all offenses in Chapter Two, Part A," which encompasses criminal sexual abuse. U.S.S.G. §§ 3D1.2(d) and 2A3.1; *see also United States v. Williams*, 431 F.3d 767, 772 n.8 (11th Cir. 2005). Based on the explicit demands of U.S.S.G. § 3D1.2(d) and the applicable relevant conduct definition, it is likely that Moore's sexual abuse of Victim 1 that occurred before Victim 1 was 12 years old does not constitute "relevant conduct" for purposes of applying the four-level increase under U.S.S.G. § 2A3.1(b)(2). As such, the district court may have erred in applying the four-level increase under U.S.S.G. § 2A3.1(b)(2). But even though this may have been error that was plain, for the reasons stated above, it did not affect Moore's substantial rights. Thus, Moore cannot succeed on this basis as it fails under plain error review.

Under 18 U.S.C. § 3553(c)(2), if the district court imposes a sentence outside the guidelines range, then the district court must state orally during the sentencing hearing "the specific reason for the imposition of a sentence different from" the guidelines range. *See* 18 U.S.C. § 3553(c)(2). The purpose of this requirement to explain adequately the chosen sentence is "to allow for meaningful appellate review." *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)).

Here, during the sentencing hearing, the district court orally set forth a lengthy explanation for the above-guidelines sentence which touched on multiple reasons and § 3553(a) factors, including the nature and circumstances of the offense. In particular, the district court explained that its sentence was justified because of (1) the length of time that Moore abused his victims, (2) the number of victims, (3) the number of instances of abuse— "hundreds of occasions of forced sexual abuse of minors who were in [Moore's] care," (4) Moore's status as a minister, (5) Moore's status as the victims' adopted father, (6) the nature of the abuse, including vaginally penetrating Victim 1 at 11 years old, and (7) the amount of trauma and fear that the victims repeatedly experienced, which caused them shame, guilt, distrust, and unhealthy relationships. The district court further found Moore's case to be "extraordinary" and on "another level" from other child sexual abuse cases she had encountered over the past 20 years.

We readily conclude the district court provided an adequate oral explanation for the above-guidelines sentence.

To the extent Moore also argues the district court's stated factors "were already accounted for in the [g]uidelines calculation" and thus it was procedurally unreasonable to consider them, that argument fails for two reasons. First, a district court is not precluded from considering conduct used to calculate the defendant's advisory guidelines range in deciding to impose a variance. *See United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007). Second, whether the reasons given sufficiently compel a sizeable upward variance is really a challenge to the substantive reasonableness of the variance. *See United States v. Curtin*, 78 F.4th 1299, 1311, 1314 (11th Cir. 2023). We find no procedural error in the district court's explanation for the variance.

## IV.    SUBSTANTIVE REASONABLENESS

The district court justified Moore's above-guidelines sentence as a departure or, alternatively and independently, as a variance. Because the parties' briefs focus on the variance, we address that ground first.

As to the upward variance, Moore contends that his 720-month sentence is substantively unreasonable because the district court improperly balanced the § 3553(a) factors. Moore argues that the district court gave excessive weight to Moore's uncharged conduct and insufficient weight to whether a 720-month sentence is necessary to reflect the seriousness of the charged offenses, for deterrence, and to protect the community.

## A.    Upward Variance - General Principles

The substantive reasonableness of a defendant's sentence is measured based on the "totality of the facts and circumstances" considering the § 3553(a) factors.[4] *See United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc).   On substantive reasonableness review, we may vacate a sentence only if we are left with the "definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors" to arrive at an unreasonable sentence based on the facts of the case.  *Id*. at 1190 (quoting *Pugh*, 515 F.3d at 1191).

This Court has emphasized that the "decision about how much weight to assign a particular sentencing factor is committed to the sound discretion of the district court."  *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015) (quotation marks omitted).  "In fact, a district court may attach great weight to one § 3553(a) factor over others."  *United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022).   A district court, however, abuses its

---

[4] The § 3553(a) sentencing factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) to afford adequate deterrence to criminal conduct; (4) to protect the public from further crimes of the defendant; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the applicable Sentencing Guidelines range and the kinds of sentences available; (7) the pertinent policy statements of the Sentencing Commission; (8) the need to avoid unwarranted sentencing disparities; and (9) the need to provide restitution to the victims.  18 U.S.C. § 3553(a); *Gall*, 552 U.S. at 50 n.6.

discretion when it fails to consider relevant factors, gives significant weight to an improper or irrelevant factor, or weighs the factors unreasonably. *Irey*, 612 F.3d at 1189.

If the district court decides to impose an upward variance, "it must 'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008) (quoting *Gall*, 552 U.S. at 50). In imposing an upward variance, the district court may "consider conduct that a probation officer already had considered in calculating the defendant's advisory guidelines range." *United States v. Johnson*, 803 F.3d 610, 619 (11th Cir. 2015) (quotation marks omitted); *cf*. 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

In reviewing the reasonableness of a sentence outside the advisory guidelines range, we take into account the district court's stated justifications and the extent of the variance, but we do not require extraordinary circumstances to justify such a sentence or presume that such a sentence is unreasonable. *Gall*, 552 U.S. at 47; *Irey*, 612 F.3d at 1186-87. We give "due deference to the district court's decision that the § 3553(a) factors, on the whole, justify the extent of the variance." *Irey*, 612 F.3d at 1187 (quoting *Gall*, 552 U.S. at 51).

### B.    Analysis of Upward Variance

Applying the above principles, we cannot conclude that Moore's 720-month sentence is substantively unreasonable. The district court stated that it considered the § 3553(a) factors, reviewed the PSI and Moore's sentencing memorandum, and heard from Moore and Victim 1 in determining a sentence. The district court weighed the § 3553(a) factors in imposing an upward variance and provided a detailed explanation for its decision to vary upward to the maximum sentence the law allowed. *See Curtin*, 78 F.4th at 1314.

As explained by the district court, Moore, a minister and missionary, sexually abused one of his adopted daughters weekly while on a mission trip in Fiji and while residing and traveling throughout the United States and Canada for a period of approximately 10 years. Moore also abused his other adopted daughter monthly. Moore abused Victim 1 from the ages of 8 to 17 and Victim 2 from the ages of 10 or 11 to 16.

Moore's sexual abuse involved vaginally penetrating Victim 1 with his fingers when she was as young as 11 years old and masturbating to the point of ejaculation while doing so. By the time Victim 1 was 17 years old, Moore had engaged in non-consensual vaginal sexual intercourse with her and his sexual abuse did not stop until Victim 1 moved out of the Moore residence and to a different location in Fiji.

Moore's abuse of Victim 2 began when she was 10 or 11 years old with Moore touching Victim 2 underneath her clothes,

on her vagina with his bare hand. Moore would make Victim 2 masturbate him with her hand. Moore's sexual abuse of Victim 2 did not stop until she developed a long-term illness around the age of 16. Given the severity and the pervasiveness of Moore's sexual abuse of his two daughters over such a prolonged period of time, we cannot say Moore's 720-month sentence is unreasonable.

Moore complains that the extensive nature of his sexual abuse was already accounted for in the five-level "pattern of activity" increase in his offense-level under U.S.S.G. § 4B1.5(b)(1). But, as we already explained, the district court was permitted to consider Moore's pattern of abuse, even though it was already considered to some extent in calculating his advisory guidelines range. *See Johnson*, 803 F.3d at 619; *Amedeo*, 487 F.3d at 833. And the "pattern of activity" increase requires only that the defendant "engaged in prohibited sexual conduct on at least two separate occasions, regardless of whether the crimes were committed against the same victim or different victims." *United States v. Boone*, 97 F.4th 1331, 1340-41 (11th Cir. 2024). Therefore, the guidelines increase did not account for the exceptionally egregious nature of Moore's abuse—"hundreds of occasions of forced sexual abuse of minors who were in [his] care."

As for Moore's argument that the district court gave too much weight to his uncharged sexual abuse of his minor daughters, the weight to be given to each factor is left to the sound discretion of the district court. *See Rosales-Bruno*, 789 F.3d at 1254; *Butler*, 39 F.4th at 1355. Here, the district court was well within its

discretion to attach great weight to the particularly egregious nature and extended history of Moore's abuse of his two victims. *See Butler*, 39 F.4th at 1355. We will not second guess the weight the district court gave to the § 3553(a) factors "so long as the sentence is reasonable under the circumstances." *Id.*

Finally, this Court has upheld as reasonable equally lengthy sentences in other cases involving child sex crimes based on the nature of the offense. *See, e.g., Boone*, 97 F.4th at 1335, 1342 (affirming as substantively reasonable a sentence of 840 months imposed after defendant pled guilty to using a minor to produce child pornography and distributing and possessing child pornography); *United States v. Sarras*, 575 F.3d 1191, 1220-21 (11th Cir. 2009) (affirming a total sentence of 1,200 months and observing that "[c]hild sex crimes are among the most egregious and despicable of societal and criminal offenses, and courts have upheld lengthy sentences in these cases as substantively reasonable"). Indeed, this Court has "upheld time and again sentences that will outlast a child [sexual abuser's] life." *United States v. Isaac*, 987 F.3d 980, 996 (11th Cir. 2021) (affirming as substantively reasonable a 960-month sentence); *see also Irey*, 612 F.3d at 1220-21 (collecting cases affirming various decades long sentences for offenses involving sexual abuse of children).

Given the particularly egregious and horrific circumstances of this case, the district court's decision to vary upward and impose a 720-month sentence was within its discretion and Moore has not shown his sentence was substantively unreasonable.

### V.    UPWARD DEPARTURE UNDER § 5K2.0(a)(1)(B)

Moore's initial brief did not challenge the district court's explicit upward departure under U.S.S.G. § 5K2.0(a)(1)(B), but only argued his 720-month sentence was an improper variance from the advisory guidelines range.  The government's brief responded to the merits of Moore's variance arguments.  The government could have argued that Moore forfeited the upward departure issue, but it did not.  Moore's reply brief also did not address the district court's explicit upward departure.  Because Moore forfeited the departure ground, we could have affirmed Moore's sentence on that guidelines-departure ground alone and gone no further.  *See United States v. Campbell*, 26 F.4th 860, 871-72 (11th Cir.) (en banc), *cert. denied*, 143 S. Ct. 95 (2022); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).

Nonetheless, given Moore's sentence is the statutory maximum on both counts run consecutively and the government did not raise the forfeiture issue, we exercise our discretion to review his 720-month sentence as an explicit upward departure too, especially since that was the first reason the district court gave.

A district court may depart upward in "child crimes and sexual offenses" under § 5K2.0(a)(1)(B) if "there exists an aggravating circumstance, of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." U.S.S.G. § 5K2.0(a)(1)(B).  This Court has ruled that upward departures under this section "are allowed for acts of misconduct not resulting in conviction, as long as those

acts, whether or not relevant conduct in the section 1B1.3 sense, *relate meaningfully to the offense of conviction.*"  *United States v. Ellis*, 419 F.3d 1189, 1193 n.4 (11th Cir. 2005) (quotation marks omitted).

The district court also did not err when it departed upward under U.S.S.G. § 5K2.0(a)(1)(B).[5]  Moore abused two minor victims and his abuse occurred over approximately 10 years.  The district court found that (1) Moore's case was "extraordinary" and "exceptional" because "the length of time that [Moore] abused [his] victims," and (2) the "hundreds of occasions of forced sexual abuse of minors who were in [Moore's] care" took his case "to another level."  The district court ruled that Moore's uncharged instances of sexual abuse were related to his two offenses of conviction and that his protracted instances of sexual abuse of two victims were aggravating factors not adequately taken into consideration by the guidelines.  *See United States v. Hersh*, 297 F.3d 1233, 1250-53 (11th Cir. 2002) (affirming 105-year sentence where district court departed upward under U.S.S.G. § 5K2.0[6] from advisory guidelines

---

[5] We review a district court's decision to depart upward for an abuse of discretion.  *United States v. Magluta*, 418 F.3d 1166, 1184 (11th Cir. 2005).  We review *de novo* a district court's interpretation of any part of the guidelines, we review the district court's factual findings for clear error, and we review the extent of a departure for an abuse of discretion.  *United States v. Crisp*, 454 F.3d 1285, 1288 (11th Cir. 2006); *United States v. Weaver*, 920 F.2d 1570, 1573 (11th Cir. 1991).

[6] Although *Hersh* was decided under an earlier iteration of U.S.S.G. § 5K2.0 that did not contain any subsections, that earlier version, similar to the current § 5K2.0(a)(1)(B), permitted a district court to impose a sentence outside the guidelines range based on an "aggravating" circumstance that is "of a kind, or

23-13234            Opinion of the Court            29

range of 121 to 151 months because defendant "engaged in willful conduct to lure and entice particularly vulnerable young boys into sexual relations with him over a twenty-year period" and the guidelines did not "sufficiently reflect the vulnerability of the victims").

Our decision in *Hersh* is instructive. This Court affirmed Hersh's 105-year prison sentence, explaining that "inclusion of a factor in the [g]uidelines calculation does not proscribe departure based on consideration of the factor since a sentencing court may depart based on a considered factor if the factor is present to an exceptional degree or in some other way makes the case distinguishable from an ordinary case where the factor is present." *Id.* at 1252 (quotation marks omitted and alterations adopted).

---

to a degree, not adequately taken into consideration" by the guidelines. The applicable version of U.S.S.G. § 5K2.0 read:

> Under 18 U.S.C. § 3553(b), the sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." . . .

> Where, for example, the applicable offense guideline and adjustments do take into consideration a factor listed in this subpart, departure from the applicable guideline range is warranted only if the factor is present to a degree substantially in excess of that which ordinarily is involved in the offense.

*Hersh*, 297 F.3d at 1252 n.28 (quoting U.S.S.G. § 5K2.0 (2001)).

Additionally, the district court here was well within its discretion to consider Moore's prolonged abuse of Victim 2. Moore sexually abused Victim 2 for several years on a monthly basis. Even though Moore's acts against Victim 2 were not charged and did not result in a conviction, the district court could consider those acts because they "relate meaningfully to the offense of conviction." *See Ellis*, 419 F.3d at 1193 n.4 (emphasis and quotation marks omitted); U.S.S.G. § 5K2.21.

And as discussed above, Moore's extensive and egregious misconduct, both charged and uncharged, was not adequately considered in calculating his advisory guidelines range.

At bottom, Moore subjected his two minor daughters to years of frequent, horrible sexual abuse. Moore's egregious and horrific conduct renders his case a "rare[] and . . . exceptional case[]," that fits well within the criteria of U.S.S.G. § 5K2.0(a)(1)(B). *See* U.S.S.G. § 5K2.0 cmt. n.3(A)(ii) and n.3(B)(i). As the district court correctly noted, Moore's misconduct was extraordinary and was not adequately considered in calculating his advisory guidelines range. Accordingly, the district court did not err in departing upward to the statutory maximum sentence.

## VI.    CONCLUSION

For the foregoing reasons, we affirm Moore's total 720-month sentence.

**AFFIRMED.**