[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-11297

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JASON C. MARTINEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:22-cr-00051-TKW-2

_____

Before JILL PRYOR, BRANCH, and HULL, Circuit Judges.

PER CURIAM:

After pleading guilty, Jason Martinez appeals his sentence of 96 months' imprisonment for conspiracy to distribute and possess with intent to distribute alprazolam, in violation of 21 U.S.C. §§ 846 and 841(a)(1) & (b)(2). On appeal, Martinez argues that his sentence, above his advisory guidelines range, is procedurally and substantively unreasonable. After review, we affirm Martinez's 96-month sentence.

## I.    BACKGROUND

We outline the facts as admitted by Martinez in a signed factual proffer or unobjected to in his presentence investigation report ("PSI").

## A.    Alprazolam Conspiracy

On November 3, 2020, the Florida Highway Patrol responded to a vehicle that crashed into a wooden privacy fence in Pensacola, Florida. The driver and sole occupant of the vehicle was Chad Dennison.

Inside the vehicle, the responding officers found "a large amount of white and green powder" and 15,848 oblong pills inscribed with "S-90-3." The pills were later identified to be alprazolam, also known as Xanax, a schedule IV controlled substance. The containers holding the pills were labeled "batch #16 11/2/20" and "batch C 11/3/20." Law enforcement seized

the pills, but the driver Dennison was not arrested. The Florida Department of Law Enforcement laboratory later confirmed that the seized pills were alprazolam.

On December 10, 2020, Escambia County Sheriff's Office deputies responded to the death of Fallon Tolbert reported at the home of Dennison and his wife, Tina Rahn, in Pensacola, Florida. During their investigation into the death, Tolbert's boyfriend told the deputies that Dennison and Rahn were known Xanax dealers.

Between approximately May 13, 2021 and March 9, 2022, the United States Postal Inspection Service investigated suspicious packages that were dropped off by Dennison and Rahn at various United States Postal Service facilities in Pensacola, Florida, for shipment across the country. During the investigation, officials pulled a total of 102 random packages and, after obtaining judicially authorized search warrants, discovered that each contained pills bearing markings consistent with alprazolam. Based on the contents of the 102 packages, officials calculated that Dennison had delivered approximately 2,429,000 pills from November 3, 2020 to March 11, 2022.

On March 10, 2022, a postal inspector was granted a federal search warrant for Dennison and Rahn's residence. Law enforcement executed the search warrant on March 11, 2022 and discovered, among other items, (1) "a significant volume of green pills," which appeared to be alprazolam, but were later determined to not contain any controlled substances, and also (2) fentanyl and methamphetamine. During the search, Dennison told

investigators that he was recruited by Martinez to mail fake Xanax pills and that he began working for Martinez shortly before the November 2020 car crash. Dennison stated that Martinez would pay him approximately $500 in cash each week to mail packages containing fake Xanax pills.

Dennison also advised law enforcement that Martinez utilized an outbuilding to press and package the pills and provided law enforcement with the location of the outbuilding. Law enforcement conducted surveillance on the provided address and observed a white truck, which was registered to Martinez, at the outbuilding.

Law enforcement executed a search warrant at the outbuilding and found, among other things, (1) various items relating to pressing pills, (2) a significant amount of mailing materials, (3) a significant volume of pills suspected to be alprazolam, and (4) a significant volume of colored powders. They also discovered Martinez actively attempted to flush documents down a toilet.

Simultaneously, law enforcement conducted surveillance of Martinez's residence, where they observed a woman arrive at the house, enter the residence empty-handed, and exit the residence approximately four minutes later with a duffle bag. The surveilling officers conducted a traffic stop of the woman when she ran a stop sign, and, after searching the duffle bag with her consent, they found boxed rolls of printing labels, a label maker, and a laptop.

While detained during the search of the outbuilding, Martinez told officers that while incarcerated for a prior conviction he "received a contact of an individual" who delivered two pill presses to him when he was released. Shortly thereafter, an individual stayed with Martinez for two days and trained him on the process of how to make and ship pills that appear to be alprazolam. Martinez told the officers that he was told at the time that the pills would not actually contain alprazolam. Martinez also stated that he tested the pills to ensure that they did not contain fentanyl but did not otherwise identify the ingredients. Martinez explained that he received orders for the pills via email through "Proton Mail," and he received approximately $9,000 to $10,000 per week, minus commissions. Martinez also admitted that he instructed his wife to get rid of the printer and laptop in his residence.

Law enforcement then executed a search of Martinez's residence, where they found more pills suspected of being alprazolam.

## B.    Grand Jury Charges and Plea

On August 16, 2022, a federal grand jury changed Martinez, along with co-defendants Dennison and Rahn, with one count of conspiracy to distribute and possess with intent to distribute alprazolam, in violation of 21 U.S.C. §§ 846 and 841(a)(1) & (b)(2) ("Count 1"), and one count of possession with intent to distribute alprazolam, in violation of 21 U.S.C. § 841(a)(1) & (b)(2) and 18

U.S.C. § 2 ("Count 2").  Count 1 referred to a conspiracy that occurred from about November 1, 2020 to March 11, 2022.

Pursuant to a written plea agreement, Martinez pled guilty to Count 1, and the government agreed (1) to move to dismiss Count 2 at sentencing and (2) not to file any further criminal charges against Martinez "arising out of the same transactions or occurrences to which [Martinez] has pled."[1]  The plea agreement noted that, for Count 1, Martinez faced "a maximum term of ten years imprisonment, a mandatory minimum of two years supervised release, a maximum fine of $500,000.00, and a mandatory $100.00 special monetary assessment."  The parties reserved the right to appeal any sentence imposed.

A magistrate judge conducted a hearing pursuant to Federal Rule of Criminal Procedure 11 and recommended that Martinez's plea be accepted.  There were no objections to the magistrate judge's Report and Recommendation, and the district court accepted Martinez's guilty plea.

## C.    Presentence Investigation Report

The PSI calculated a total offense level of eight for Count 1, consisting of: (1) a base offense level of six, pursuant to U.S.S.G. § 2D1.1(a)(5);  (2) a two-level increase, pursuant to U.S.S.G. § 2D1.1(b)(12), because Martinez maintained an outbuilding for

---

[1] Dennison and Rahn also pled guilty to Count 1.  Dennison was sentenced to 48 months' imprisonment and Rahn was sentenced to 24 months' imprisonment.

23-11297                Opinion of the Court                7

the purpose of manufacturing pills; (3) a two-level increase, pursuant to U.S.S.G. § 3B1.1(c), because Martinez was an organizer, leader, manager, or supervisor in the criminal activity; and (4) a two-level decrease for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a).

The PSI also calculated Martinez's criminal history category as III, based on Martinez's criminal history score of six points. PSI assigned (1) three criminal history points for Martinez's 2003 conviction for unlawful possession of a controlled substance and (2) another three criminal history points for Martinez's 2001 conviction for possession with intent to distribute methylenedioxymethamphetamine (ecstasy or MDMA) and possession of a firearm by a convicted felon. For his 2001 conviction, Martinez was originally sentenced to 294 months' imprisonment, but his sentence was reduced to 180 months' imprisonment in 2004. In 2014, Martinez was released and began a term of supervised release, but his supervised release was revoked and he was sentenced to 60 months' imprisonment after he was arrested for trafficking methamphetamine. Martinez was released from custody on July 29, 2020.

In addition to his 2003 and 2001 convictions, the PSI noted that Martinez was also previously convicted of, *inter alia*: (1) possession of marijuana with intent to sell in 1996; (2) sale / delivery of marijuana in January 1998; and (3) sale / delivery of marijuana in March 1998, but did not assign any

criminal history points for these convictions due to the age of the convictions.

Martinez's total offense level of eight and criminal history category of III yielded an advisory guidelines range of 6 to 12 months' imprisonment.

The PSI noted that a departure may be warranted under U.S.S.G. § 4A1.3(a)(1) "if reliable information indicates that [Martinez's] criminal history category substantially underrepresents the seriousness of [his] criminal history [or] the likelihood that [Martinez] will commit other crimes." In a separate section, the PSI also noted that there were factors that may warrant a variance under 18 U.S.C. § 3553(a). Specifically, the PSI identified: (1) the nature and circumstances of the current offense and the history and characteristics of Martinez; (2) the need to reflect the seriousness of the offense; (3) the need to afford adequate deterrence; (4) the need to protect the public; and (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Martinez did not file objections to the final PSI. On March 31, 2023, Martinez filed a separate sentencing memorandum that requested a sentence within the advisory guidelines range of 6 to 12 months, and outlined why a within-guidelines sentence was appropriate.

The government objected to the PSI's advisory guidelines range, arguing, *inter alia*, that a two-level increase pursuant to

U.S.S.G. § 2D1.1(b)(7) applied.  The government asserted that the two-level increase applied because the conspiracy involved mass marketing via computer.  The government argued that Martinez "received all orders via Proton mail as a result of such marketing, and shipments were made throughout the country to all such purchasers."  The government also notified Martinez and the district court of its intention to request an upward variance based on: (1) the need to avoid unwarranted sentencing disparities; (2) Martinez's role in the conspiracy; and (3) specific deterrence.

**D.    Sentencing**

On April 4, 2023, the district court conducted Martinez's sentencing hearing.  The district court began by addressing the advisory guidelines calculation, noting that although the guidelines are not binding, it was important that they "get calculated correctly."

Martinez argued that the U.S.S.G. § 2D1.1(b)(7) mass-marketing increase did not apply because "the stuff that they intercepted that was sold over the internet wasn't a controlled substance."  Martinez further argued that there was no evidence that the alprazolam found in Dennison's car in November 2020 "was being shipped out."

The district court ultimately applied a two-level increase for mass marketing via computer, pursuant to U.S.S.G. § 2D1.1(b)(7). The district court determined that there was no indication in Martinez's case or his co-conspirators' cases "that things were not being distributed" the same way from the start of the conspiracy to

the end of it.  Therefore, there was sufficient evidence from which the district court could infer that the alprazolam found in Dennison's car was going to be sold over the internet.

The district court then calculated Martinez's total offense level to be 10, with two levels coming from the U.S.S.G. § 2D1.1(b)(7) mass-marketing increase.  Martinez's offense level of 10 and criminal history category of III yielded an advisory guidelines range of 10 to 16 months' imprisonment.  That was "the range that [the district court] t[ook] into consideration" in sentencing Martinez.

The district court then moved on to the § 3553(a) factors and noted that while the guidelines range was important for it to consider, Martinez's sentence was "going to be driven by the [§] 3553(a) factors."  Martinez allocuted and expressed regret for his actions.  Next, the parties presented argument regarding sentencing.

The government argued that "a sentence near the top of the statutory maximum available in this case" was appropriate based on the following § 3553(a) factors: (1) the nature and circumstances of the offense, including the length of the conspiracy, Martinez's role as a leader, and Martinez's criminal history; (2) to avoid unwarranted sentencing disparities in the conspiracy; and (3) specific deterrence.

Martinez requested "an extended period of supervision, maybe in lieu of some of the incarceration that [the district court] otherwise would impose," arguing that (1) while he was a leader of

the conspiracy, he was only a local one, (2) he was successful on pre-trial release, (3) there was no firearm involved in the case, and (4) his co-conspirators' cases involved significant quantities of methamphetamine and fentanyl and his did not.

The district court initially sentenced Martinez to a 96-month term of imprisonment, followed by three years of supervised release. The district court expressly stated that it "certainly" took the advisory guidelines range into consideration, but ultimately found that an upward variance was justified because of: (1) Martinez's belief he was producing a controlled substance, even though the bulk of the pills were not controlled substances; (2) the seriousness of the offense; (3) the volume of pills involved; (4) the need for specific deterrence; (5) Martinez's criminal history; (6) the need to avoid unwarranted sentencing disparities among co-conspirators; (7) the significant financial benefits Martinez received from the conspiracy; and (8) the proximity of time between Martinez's release from prison and the beginning of the conspiracy. In addressing sentencing disparities, the district court noted that while Martinez's co-conspirators were found with other drugs, they were sentenced "to very much below their guidelines" because the district court "really tr[ied] to focus [its] sentence" on the conspiracy.

Notably, the district court stated that its "sentence would be the same sentence irrespective of the [g]overnment winning all of its objections or [Martinez] winning all of his objections on the guideline[s] range." The district court explained that Martinez's

"sentence was driven by the [§] 3553 factors, not the guidelines" and stated that while it thought it calculated the advisory guidelines range correctly, "even if [it] didn't, it wouldn't matter here."

After imposing the sentence, the district court asked whether Martinez had any objections to the sentence or manner in which it was imposed. The only issue Martinez's attorney raised was that there was a ten-year statutory maximum, and the district court had sentenced Martinez to eight years' imprisonment plus three years of supervised release. "[O]ut of an abundance of caution," the district court reduced Martinez's term of supervised release to two years. Martinez timely appealed his sentence.

## II.    STANDARDS OF REVIEW

We use a two-step process to review the reasonableness of a sentence imposed by the district court. *United States v. Cubero*, 754 F.3d 888, 892 (11th Cir. 2014). First, we determine whether the sentence is procedurally sound. *Id.* Assuming it is, we then examine whether the sentence is substantively reasonable given the totality of the circumstances and the sentencing factors set out in 18 U.S.C. § 3553(a). *Id.* At both steps of the process, the party challenging the sentence bears the burden of showing that the sentence is unreasonable. *United States v. Pugh*, 515 F.3d 1179, 1189 (11th Cir. 2008).

Generally, when reviewing for procedural reasonableness, we review legal issues *de novo*, factual findings for clear error, and the district court's application of the guidelines to the facts with due deference, which is akin to clear error review. *United States v.*

*Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010). But, where a defendant fails to object at sentencing, we review procedural reasonableness for plain error. *United States v. Grady*, 18 F.4th 1275, 1293 (11th Cir. 2021).

"We review the substantive reasonableness of a sentence for abuse of discretion, considering the totality of the circumstances." *United States v. Oudomsine*, 57 F.4th 1262, 1266 (11th Cir. 2023).

### III.    PROCEDURAL REASONABLENESS

### A.    Guidelines Calculation

Martinez contends that the district court committed procedural error by erroneously imposing a two-level mass-marketing increase under U.S.S.G. § 2D1.1(b)(7). U.S.S.G. § 2D1.1(b)(7) states, "If the defendant, or a person for whose conduct the defendant is accountable under [U.S.S.G.] § 1B1.3 (Relevant Conduct), distributed a controlled substance through mass-marketing by means of an interactive computer service, increase by **2** levels." U.S.S.G. § 2D1.1(b)(7). The Commentary explains, "For purposes of subsection (b)(7), 'mass-marketing by means of an interactive computer service' means the solicitation, by means of an interactive computer service, of a large number of persons to induce those persons to purchase a controlled substance."[2]    *Id.* § 2D1.1, cmt. n.13 (font altered). It adds,

---

[2] "Interactive computer service" is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or

"subsection (b)(7) would apply to a defendant who operated a web site to promote the sale of Gamma-hydroxybutyric Acid (GHB) but would not apply to coconspirators who use an interactive computer service only to communicate with one another in furtherance of the offense." *Id.*

We do not need to decide whether the district court erred in imposing a two-level mass-marketing increase under U.S.S.G. § 2D1.1(b)(7). In *United States v. Keene*, our Court explained that where a district court states "that the guidelines advice that results from decision of [a disputed guidelines] issue[] does not matter to the sentence imposed after the § 3553(a) factors are considered," and the sentence is reasonable in light of "the alternative or fallback reasoning of § 3553(a)," we will consider any potential error harmless. 470 F.3d 1347, 1349 (11th Cir. 2006); *United States v. Goldman*, 953 F.3d 1213, 1221 (11th Cir. 2020) ("[W]e need not review an issue when (1) the district court states it would have imposed the same sentence, even absent an alleged error, and (2) the sentence is substantively reasonable."). "[T]he burden is on the defendant to prove that his sentence is unreasonable in light of the record and § 3553(a)." *Keene*, 470 F.3d at 1350.

Here, the district court explicitly stated that regardless of whether the two-level increase under U.S.S.G. § 2D1.1(b)(7) applied, Martinez's "sentence [was] a [18 U.S.C. §] 3553[(a)] sentence." The district court further explained "that the guidelines

---

services offered by libraries or educational institutions." 47 U.S.C. 230(f)(2); *see* U.S.S.G. § 2D1.1, cmt. n.13.

are a gift, but in this case that's not going to control this sentence." Therefore, as long as Martinez's sentence is reasonable in light of "the alternative or fallback reasoning of § 3553(a)," any potential error was harmless and does not warrant reversal. *See id.* at 1349. As discussed below, Martinez fails to establish that his sentence is substantively unreasonable, and thus any potential guidelines calculation error was harmless.

**B.      Failure to Consider Advisory Guidelines Range**

Martinez argues that his above-guidelines sentence is otherwise procedurally unreasonable because the district court failed to consider the advisory guidelines range in imposing his sentence.

A district court commits a procedural error by failing to consider the advisory guidelines range. *Gall v. United States*, 552 U.S. 38, 51 (2007); 18 U.S.C. § 3553(a)(4)(A) (expressly identifying the advisory guidelines range as a § 3553(a) factor the district court must consider); *see Molina-Martinez v. United States*, 578 U.S. 189, 193, 198-99 (2016). But "the guidelines and their application provide advice about sentencing; they do not control it." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1258 (11th Cir. 2015). Simply put, while "[t]he district court must consider the advisory guidelines range in making the sentencing decision, [] it is only one of a dozen or so factors that the [district] court must take into account," and the district court retains broad discretion in weighing the factors. *Id.*

A district court sufficiently considers the advisory guidelines where there is "some indication that the district court was aware of and considered the [g]uidelines, which requires the [district] court to consider the sentencing range established under the [g]uidelines." *United States v. Campbell*, 473 F.3d 1345, 1349 (11th Cir. 2007) (emphasis, citation, and internal quotation marks omitted).

Here, the record clearly shows that the district court considered the advisory guidelines range. The district court explicitly mentioned Martinez's advisory guidelines range during the sentencing hearing, but ultimately decided the recommended sentence was inadequate under the circumstances. *See United States v. Aguillard*, 217 F.3d 1319, 1320 (11th Cir. 2000). For example, the district court stated that the advisory guidelines range of 10 to 16 months was "certainly something [it was] going to take into consideration," but based on the facts of the case, "the [§] 3553[(a)] factors . . . override that guideline[s] range as being an appropriate sentence in this case." The district court repeatedly stated that it considered the applicable advisory guidelines range, along with the other § 3553(a) factors. Thus, it is clear from the record and the district court's own statements that it was aware of and considered the advisory guidelines range. *See Campbell*, 473 F.3d at 1349. After considering the advisory guidelines range, the district court "exercised its authority to assign heavier weight to several other sentencing factors than it assigned to the guidelines range." *Rosales-Bruno*, 789 F.3d at 1259.

### C.    Failure to Provide Advance Notice of Upward Departure

Martinez also argues that his above-guidelines sentence is procedurally unreasonable because, while the district court stated it imposed a variance, it actually imposed an upward departure under U.S.S.G. § 4A1.3 and failed to provide advance notice that it was going to do so.

"Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure." Fed. R. Crim. P. 32(h).  This rule does not apply to variances.  *Irizarry v. United States*, 553 U.S. 708, 716 (2008).  We first address whether the district court varied or departed upward.

"A variance is a sentence imposed outside the guidelines range when the court determines that a guidelines sentence will not adequately further the purposes reflected in 18 U.S.C. § 3553(a)." *United States v. Hall*, 965 F.3d 1281, 1295 (11th Cir. 2020).  "A departure, by contrast, is 'a term of art under the [g]uidelines and refers only to non-[g]uidelines sentences imposed under the framework set out in the [g]uidelines,' including the departure provisions." *Id*. (quoting *Irizarry*, 553 U.S. at 714).

"To determine whether the district court varied or departed, we look, unsurprisingly, to the [district] court's reasoning and what it said about that reasoning.  Specifically, we look at whether it cited a specific guidelines departure provision in setting the defendant's

sentence, or whether its rationale was based on the § 3553(a) factors and a determination that the guidelines range was inadequate." *Id.* at 1296. When appropriate, this Court will also reference the district court's written statement of reasons. *See id.*

"Given the breadth of the § 3553(a) factors and the number of departure provisions, there is substantial overlap between the two," and thus, "the fact that the work a variance does might also be done by a departure proves nothing." *Id.* at 1297. And "departures don't have dibs over variances," meaning that even when the grounds a district court gives for its above-guidelines sentence fit under both the § 3553(a) provisions and a departure provision, the district court is not obligated to first apply the departure provision. *Id.*

In its lengthy explanation of Martinez's sentence, the district court repeatedly cited the § 3553(a) factors as the reason for its above-guidelines sentence. *See id.* at 1296. And the district court described its sentence as a variance in its statement of reasons. *Id.* At no point, either during the sentencing hearing or in the statement of reasons, did the district court mention any departure provision. We thus conclude the district court imposed an upward variance, rather than a departure.

As such, the district court was not required to provide advance notice that it was considering varying from the advisory guidelines range, and thus did not err. *See Irizarry*, 553 U.S. at 716.

And even if the district court's above-guidelines sentence did constitute an upward departure under U.S.S.G. § 4A1.3, the district

court did not fail to give the parties reasonable notice that it was contemplating such a departure. Before a district court may issue an upward departure from the advisory guidelines, notice must be given in the PSI, in a prehearing submission by the government, or by the district court itself. *United States v. Plasencia*, 886 F.3d 1336, 1344 (11th Cir. 2018). Here, the PSI noted that a departure may be warranted under U.S.S.G. § 4A1.3(a)(1). Therefore, in any event, Martinez had reasonable notice that the district court was contemplating a departure under § 4A1.3(a)(1).

## D.    Failure to Explain Sentence

Martinez asserts that the district court erred by failing to adequately explain why a sentence close to the statutory maximum was warranted. Under 18 U.S.C. § 3553(c)(2), if the district court imposes a sentence outside the advisory guidelines range, then the district court must state orally during the sentencing hearing "the specific reason for the imposition of a sentence different from" the advisory guidelines range. *See* 18 U.S.C. § 3553(c)(2). The purpose of this requirement to explain adequately the chosen sentence is "to allow for meaningful appellate review." *United States v. Steiger*, 99 F.4th 1316, 1321 (11th Cir. 2024) (en banc) (quoting *Gall*, 552 U.S. at 50).

The problem for Martinez is that the record soundly contradicts his contention. During the sentencing hearing, the district court orally set forth a lengthy explanation for the above-guidelines sentence which touched on multiple reasons and § 3553(a) factors, including the nature and circumstances of the

offense, the need to avoid unwarranted sentencing disparities, and specific deterrence.  In particular, the district court explained that its sentence was justified because of: (1) Martinez's belief he was producing a controlled substance, even though the bulk of the pills were not controlled substances; (2) the seriousness of the offense; (3) the volume of pills involved; (4) the need for specific deterrence; (5) Martinez's criminal history; (6) the need to avoid unwarranted sentencing disparities among co-conspirators; (7) the significant financial benefits Martinez received from the conspiracy; and (8) the proximity of time between Martinez's release from prison and beginning the conspiracy.

We readily conclude the district court provided an adequate oral explanation for the above-guidelines sentence.  We find no procedural error in the district court's explanation for the variance.

## IV.    SUBSTANTIVE REASONABLENESS

Martinez asserts that his sentence is substantively unreasonable because (1) the district court weighed the 18 U.S.C. § 3553(a) factors unreasonably and (2) the district court's stated § 3553(a) factors were already taken into account in his guidelines range.

The substantive reasonableness of a defendant's sentence is measured based on the "totality of the facts and circumstances" considering the § 3553(a) factors.[3]  *See United States v. Irey*, 612 F.3d

---

[3] The § 3553(a) sentencing factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, to promote respect

1160, 1189 (11th Cir. 2010) (en banc). On substantive reasonableness review, we may vacate a sentence only if we are left with the "definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors" to arrive at an unreasonable sentence based on the facts of the case. *Id.* at 1190 (quoting *Pugh*, 515 F.3d at 1191). The party challenging the sentence has the burden of showing that the sentence is unreasonable based on the facts of the case, the § 3553(a) factors, and the substantial deference owed to the sentencing court. *Rosales-Bruno*, 789 F.3d at 1256.

In reviewing the reasonableness of a sentence outside the advisory guidelines range, we take into account the district court's stated justifications and the extent of the variance, but we do not require extraordinary circumstances to justify such a sentence or presume that such a sentence is unreasonable. *Gall*, 552 U.S. at 47; *Irey*, 612 F.3d at 1186-87. We give "due deference to the district court's decision that the § 3553(a) factors, on the whole, justify the extent of the variance." *Irey*, 612 F.3d at 1187 (quoting *Gall*, 552 U.S. at 51). A district court, however, abuses its discretion

---

for the law, and to provide just punishment for the offense; (3) to afford adequate deterrence to criminal conduct; (4) to protect the public from further crimes of the defendant; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the applicable Sentencing Guidelines range and the kinds of sentences available; (7) the pertinent policy statements of the Sentencing Commission; (8) the need to avoid unwarranted sentencing disparities; and (9) the need to provide restitution to the victims. 18 U.S.C. § 3553(a); *Gall*, 552 U.S. at 50 n.6.

when it fails to consider relevant factors, gives significant weight to an improper or irrelevant factor, or weighs the factors unreasonably. *Id.* at 1189.

## A.    Weighing the 18 U.S.C. § 3553(a) Factors

This Court has emphasized that the "decision about how much weight to assign a particular sentencing factor is committed to the sound discretion of the district court." *Rosales-Bruno*, 789 F.3d at 1254 (quotation marks omitted). "In fact, a district court may attach great weight to one § 3553(a) factor over others." *United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022). We will not second guess the weight the district court gave to the § 3553(a) factors "so long as the sentence is reasonable under the circumstances." *Id.*

We cannot conclude that Martinez's 96-month sentence is substantively unreasonable. The district court stated that it considered the § 3553(a) factors, reviewed the PSI and Martinez's sentencing memorandum, and heard from Martinez in determining a sentence. The district court weighed the § 3553(a) factors in imposing an upward variance and provided a detailed explanation for its decision to vary upward.

Here, the district court was well within its discretion to attach great weight to (1) Martinez's criminal history, (2) the nature and circumstances of the conspiracy, (3) the need to avoid unwarranted sentencing disparities, and (4) the need for specific deterrence. *See id.*; *Rosales-Bruno*, 789 F.3d at 1254. We will not second guess the weight the district court gave to the § 3553(a)

factors "so long as the sentence is reasonable under the circumstances," and Martinez has failed to establish that his sentence is unreasonable. *Butler*, 39 F.4th at 1355.

## B.    Section 3553(a) Factors Considered in Guidelines

If the district court decides to impose an upward variance, "it must 'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008) (quoting *Gall*, 552 U.S. at 50). In imposing an upward variance, the district court may "consider conduct that a probation officer already had considered in calculating the defendant's advisory guidelines range." *United States v. Johnson*, 803 F.3d 610, 619 (11th Cir. 2015) (quotation marks omitted); *cf.* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

Martinez complains that his criminal history was already accounted for in his advisory guidelines range. But the district court was permitted to consider Martinez's criminal history, even though it was already considered to some extent in calculating his advisory guidelines range. *See Johnson*, 803 F.3d at 619. And his criminal history category did not reflect his three drug convictions from 1996 and 1998. Therefore, the advisory guidelines range did not account for the full extent of Martinez's criminal history.

Finally, this Court has upheld as reasonable many sentences varying above the advisory guidelines range based primarily on criminal history. *See, e.g.*, *Rosales-Bruno*, 789 F.3d at 1253, 1256-57 (affirming as substantively reasonable a sentence of 87 months' imprisonment, which included a 60-month upward variance based on the defendant's criminal history); *United States v. Early*, 686 F.3d 1219, 1221-23 (11th Cir. 2012) (affirming as substantively reasonable a sentence of 210 months' imprisonment, which included a 113-month upward variance based on the defendant's criminal history); *United States v. Shaw*, 560 F.3d 1230, 1239-41 (11th Cir. 2009) (affirming as substantively reasonable a sentence of 120 months' imprisonment, which included an 83-month variance based on the defendant's criminal history and risk of recidivism).

Martinez's sentence is not substantively unreasonable because the district court did not fail to consider any relevant factors, did not consider any improper factors, and did not commit a clear error in judgment in its assessment of the relevant factors. *See Irey*, 612 F.3d at 1189.

## V.    CONCLUSION

For the foregoing reasons, we affirm Martinez's total 96-month sentence.

**AFFIRMED.**