**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

—————————————

No. 24-12057

Non-Argument Calendar

—————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

COROY DONTAVIA FLOURNOY,

*Defendant-Appellant.*

—————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:23-cr-00110-SPC-NPM-1

—————————————

Before JORDAN, KIDD, and TJOFLAT, Circuit Judges.

PER CURIAM:

Coroy Flournoy appeals his conviction and sentence for possessing a firearm as a convicted felon. We affirm.

## I.

According to a police report and Immon Pomerleu's original statement to police, Flournoy broke into her home on February 13, 2023, by kicking and ramming the front door until it opened. Pomerleu was his ex-girlfriend at the time and was present in the home with the 12-year-old son that she and Flournoy shared. Inside, Flournoy allegedly argued with the son, held a firearm with an extended magazine, and threatened to hurt Pomerleu. Flournoy was arrested at his mother's house on February 21, 2023, pursuant to a state arrest warrant for first-degree armed burglary, aggravated assault with a deadly weapon, and possession of a firearm as a convicted felon.

Following the arrest, police officers executed a search warrant at the mother's home, which uncovered multiple firearms and rounds of ammunition. Afterward, forensic analysts found Flournoy's DNA on one of the firearms, which had an extended magazine.

Pomerleu was deposed in October 2023, and she gave testimony that contradicted the police report and her initial statement. She testified that Flournoy was living at her home at the time of the alleged break-in, that he did not threaten or batter her, and that she had never seen him possess the firearm.[1] The son gave similar deposition testimony. The state dismissed all criminal charges

---

[1] Pomerleu was engaged to Flournoy at the time she gave the deposition.

against Flournoy, though it still pursued a violation of probation charge based on his conduct.

A federal grand jury later indicted Flournoy on one count of possession of a firearm as a convicted felon. The indictment stated that the offense occurred "on or about February 21, 2023." Flournoy pleaded guilty to the charge.

The probation office filed a presentence investigation report (PSR). The PSR described the instant offense without mentioning the deposition testimony that contradicted the police report. It also listed Flournoy's base offense level at 20 and added a four-level enhancement for possessing the firearm in connection with another felony—the alleged armed burglary and aggravated assault on February 13—and a three-level reduction for timely acceptance of responsibility. This left Flournoy with a total offense level of 21. The PSR also detailed Flournoy's criminal history, which showed that he was on probation for possessing a firearm as a convicted felon and for trafficking and possessing controlled substances when he committed the instant offense. Flournoy's criminal history category was II, and his Guidelines' imprisonment range was 41 to 51 months.

Flournoy objected to the PSR's offense description for failure to mention the contradictory deposition testimony. He also objected to the four-point enhancement for possession in connection with another felony; he argued that the deposition testimony negated the enhancement and that the alleged other felony was from

February 13, 2023, while the possession offense he pleaded guilty to occurred on February 21.

At sentencing, the Government did not object to adding information about the deposition testimony to the PSR, and it conceded that it could not establish that Flournoy had committed another felony offense in connection with the possession. It, therefore, would not seek the four-level enhancement.

The District Court sustained Flournoy's objections and directed the probation officer to revise the PSR. The updated calculations provided that Flournoy's total offense level was 17, his criminal history category was II, and his Guidelines' imprisonment range was 27 to 33 months' imprisonment.

Flournoy requested a sentence within the updated Guidelines' range. He argued that two of his three criminal history score points were from a ten-year-old conviction, that none of his past convictions were for violent offenses, and that he owned a home construction company. He also reminded the Court that he had served six months in jail while awaiting sentencing and would not receive credit for it against the sentence the Court imposed.[2] Flournoy also allocuted, apologizing to the Court and his family.

---

[2] The time he spent in pre-sentence detention counted toward any prison time imposed by the state court for the probation violation, not toward the prison time imposed by the federal court for the possession offense.

The Government requested a "high-end guideline sentence." It stated that, regardless of what actually happened on February 13, 2023, the conduct charged "remains troubling." It noted that the firearm was discovered under the mattress of Flournoy's disabled sister and that the offense occurred while Flournoy was on probation for a different possession of a firearm by a convicted felon offense, which had also occurred in his mother's home. The Government argued that Flournoy's past sentence "did essentially nothing to deter him from committing the same crime in the same place" again and that Flournoy had "learned absolutely nothing." It also asked the Court to not give any credit related to the six months Flournoy spent in pre-sentence detention and to ensure that this sentence would run consecutive to any sentence imposed by the state related to the violation of probation charge.

The Court then stated that it listened to the arguments presented, reviewed the PSR, and looked to the sentencing factors. Though the Court was "trouble[ed]" by the differences between the police report and the subsequent depositions, it explained that it had to accept Pomerleu's deposition testimony and that it did that by rejecting the four-point offense-level enhancement for possession in connection with another felony. The Court also noted that the instant offense was "an extremely serious violation" that was "concerning and problematic." And it expressed concern that Flournoy's criminal history dated back to 2002, that he committed the instant offense while on probation for the same criminal conduct, and that Flournoy had kicked in the door of his residence.

The Court explained that it hoped Pomerleu's statements in deposition were true but that it also hoped she did not lie to the police. It reasoned that, ultimately, "[a]t some point, somebody was lying." But it explained that "I can't sentence you for that, and I'm not sentencing you for that. I'm only sentencing you for what you're here before me."

It concluded that a variance from the Sentencing Guidelines was warranted, and it sentenced Flournoy to 41 months' imprisonment, to run consecutive to the term imposed in the state court case and to be followed by 3 years' supervised release. Flournoy objected to the sentence. He now timely appeals, arguing that the felon in possession statute is unconstitutional and that his sentence was substantively unreasonable.

## II.

It is unlawful for a convicted felon "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1). Flournoy challenges his conviction under this statute, arguing that the statute is unconstitutional, facially and as applied, because it exceeds Congress's authority under the Commerce Clause and violates the Second Amendment.[3]

---

[3] Pomerleu acknowledges that his arguments here are foreclosed but maintains them for purposes for further review.

"We review arguments raised for the first time on appeal for plain error." *United States v. Clark*, 274 F.3d 1325, 1326 (11th Cir. 2001). "To establish plain error, a defendant must show: (1) an error; (2) that was obvious; (3) that affected the defendant's substantial rights; and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Dudley*, 5 F.4th 1249, 1255 (11th Cir. 2021).

## A.

The Commerce Clause provides Congress the power to "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. Our Court has "clearly held" that 18 U.S.C. § 922(g) is facially constitutional under the Commerce Clause. *United States v. Longoria*, 874 F.3d 1278, 1283 (11th Cir. 2017). Further, to overcome as-applied constitutional challenges to the statute, the Government need only "prove some minimal nexus to interstate commerce," which it achieves "by demonstrating that the firearm possessed traveled in interstate commerce." *United States v. Wright*, 607 F.3d 708, 715–16 (11th Cir. 2010) (internal quotation marks omitted) (alterations adopted).

Because we are bound to follow our prior precedent "unless and until it is overruled or undermined to the point of abrogation" by this Court sitting en banc or by the Supreme Court,[4] *United*

---

[4] To constitute an overruling or abrogation, it is not enough for the decision to "merely weaken" the prior precedent. *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009). It must "be clearly on point" and "clearly contrary" to

*States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008), Flournoy's facial challenge to § 922(g) under the Commerce Clause is foreclosed and rejected. Further, Flournoy admitted that the firearm he possessed in the state of Florida was manufactured outside the state of Florida. It thus met the minimal nexus requirement to survive Flournoy's as-applied challenge.

### B.

The Constitution provides that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. However, prohibitions "on the possession of firearms by felons . . . are presumptively lawful," *United States v. Rahimi*, 602 U.S. 680, 699, 144 S. Ct. 1889, 1902 (2024), and § 922(g) does not violate the Second Amendment regardless of the felon's motive for possessing a firearm, *United States v. Rozier*, 598 F.3d 768, 770 (11th Cir. 2010); *see also United States v. Dubois*, 139 F.4th 887, 893–94 (11th Cir. 2025) (holding that *Rozier* remains good law under *Rahimi*). As above, under our prior precedent, Flournoy's facial challenge to § 922(g) under the Second Amendment is foreclosed and, thus, rejected. *See Archer*, 531 F.3d at 1352.

His as-applied challenge is similarly rejected. He asserts that he is a person protected by the Second Amendment and that his conduct fell within the Second Amendment's plain text, so barring

---

prior precedent, *Edwards v. U.S. Att'y Gen.*, 97 F.4th 725, 743 (11th Cir. 2024), and it must "demolish and eviscerate" each of the prior precedent's "fundamental props," *Del Castillo v. Sec'y, Fla. Dep't of Health*, 26 F.4th 1214, 1223 (11th Cir. 2022) (alterations adopted).

him from possessing a firearm was unconstitutional. Flournoy is a convicted felon, so prohibiting him from possessing a firearm is permitted under the Second Amendment. *See Rozier*, 598 F.3d at 770.

Section 922(g) is constitutional facially and as applied to Flournoy under both the Commerce Clause and the Second Amendment. Flournoy's conviction under the statute was, therefore, not error.

## III.

Flournoy also challenges the substantive reasonableness of his sentence. He argues that his 41-month sentence was not warranted because the Court sustained his objection to the enhancement for possessing the firearm in connection with another felony[5] and the factors the Court relied on in imposing the upward variance were already accounted for in his Guidelines range.

When reviewing the substantive reasonableness of a sentence, we consider the totality of the circumstances under a deferential abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007). We give "due deference" to the district court both in considering and weighing the sentencing factors, *United States v. Shabazz*, 887 F.3d 1204, 1224 (11th Cir. 2018) (internal quotation marks omitted), and in deciding whether those factors justify a variance from the Guidelines range, *United States v.*

---

[5] It thus reduced Flournoy's Guidelines imprisonment range from 41–51 months to 27–33 months.

*Shaw*, 560 F.3d 1230, 1238 (11th Cir. 2009). The justification must be "sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50, 128 S. Ct. at 597. But "an extraordinary justification" is not required, *Shaw*, 560 F.3d at 1238, and the justification can be based on factors already encompassed in the Guidelines range, *see United States v. Johnson*, 803 F.3d 610, 619 (11th Cir. 2015) ("[T]he district court properly considered the defendant's prior criminal conduct in varying upward, even though the conduct already was factored into the advisory guidelines range.").

A district court abuses its discretion and imposes a substantively unreasonable sentence when it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010). The proper factors for the district court to consider at sentencing include, among others, the "nature and circumstances of the offense," "the history and characteristics of the defendant," and the seriousness of the crime. 18 U.S.C. § 3553(a). The district court does not have to give all factors equal weight; it can "attach great weight to one factor over others." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015) (internal quotation marks omitted). Further, though the court should consider the Guidelines range, it can give greater weight to the sentencing factors. *Id.* ("The Court exercised its authority to assign heavier weight to several other sentencing factors than it assigned to the guidelines range."). And a sentence is

not unreasonable simply because it is higher than what was requested by a party. *See Gall*, 552 U.S. at 49–50, 128 S. Ct. at 596 ("[T]he district judge should . . . consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party."); *see also United States v. Valnor*, 451 F.3d 744, 751–52 (11th Cir. 2006) (finding an above-Guidelines sentence reasonable despite it being higher than the sentence at the low end of the Guidelines range that the Government requested).

Here, the Court properly considered and weighed the sentencing factors. It explained that having a firearm with an extended magazine was an "extremely serious violation" that was "concerning and problematic." It discussed Flournoy's criminal history, which dates back to 2002, and the "concerning" fact that Flournoy committed the instant felon in possession offense while on probation for being a felon in possession. Finally, it noted concern for the fact that Flournoy kicked in the door of his residence.[6] These are all acceptable considerations under the sentencing factors. *See* 18 U.S.C. § 3553(a). They were permissible justifications for an upward variance. *See Johnson*, 803 F.3d at 619. The Court was within its wide discretion when it weighed them more than the Guidelines

---

[6] Flournoy maintains that the Court characterized his kicking in the door as a "serious violation" and improperly considered it as part of the instant offense. We disagree. The Court explained that the instant offense was a serious violation. It then stated that the kicking in of the door was concerning. The Court did not conflate the two. Further, though the kicking in of the door was not part of the instant offense, the Court was entitled to consider it as part of Flournoy's history and characteristics. *See* 18 U.S.C. § 3553(a)(1).

range. *See Rosales-Bruno*, 789 F.3d at 1254. And the Court was within its wide discretion when it imposed a sentence greater than that recommended by the Government. *See Gall*, 552 U.S. at 50–51; *Valnor*, 451 F.3d at 751–52.

We also explicitly reject Flournoy's implication that the Court must have sentenced him based on the enhancement that it ruled did not apply. Though the Court mentioned information related to the enhancement, it stated each time that it was not sentencing him based on it. We, of course, recognize that the imposed sentence fell within the range that the enhancement would have warranted, but such a "coincidence" does not mean that the Court "reneged on its word" and considered the improper information. *United States v. Masri*, 547 F.2d 932, 936–37 (5th Cir. 1977) (explaining that it would not assume that the Court considered a PSR after declaring it would not consider it simply because the Court imposed the exact sentence recommended by the PSR).[7] "We decline to import such an evil design to the court." *Id.* at 937.

Flournoy's sentence was substantively reasonable.

## IV.

For the foregoing reasons, we affirm Flournoy's conviction and sentence.

**AFFIRMED.**

---

[7] The Eleventh Circuit adopted as binding precedent all decisions "handed down by [the Fifth Circuit] prior to the close of business on [September 30, 1981]." *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).